*1196 TEXTO COMPLETO DE LA SENTENCIA
I
El presente caso se origina con una demanda presentada por el señor Ricardo Quiles Rivera, su esposa Blanca Sierra González y la sociedad legal de gananciales constituida entre ambos, contra la señora Carmen Gladys Bayron Rodríguez y el señor Sigfrido Rivera Solá sobre cumplimiento específico de contrato.
Ambas partes otorgaron un contrato de opción de compra, el 26 de agosto de 2000, sobre un predio de terreno de 20 cuerdas localizado en el municipio de Vega Alta. Los señores Bayron Rodríguez y Rivera Solá se obligaron a vender dicho predio a los esposos Quiles y Sierra por la cantidad de $4,500,000.
En el contrato de opción se pactó que, al momento de su firma, los esposos Quiles y Sierra entregarían un depósito de $100,000 a los señores Bayron Rodríguez y Rivera Solá. Las partes acordaron, además, un pago de $2,000,000 al momento de firmar la Escritura de Compraventa con precio aplazado, la cual debía otorgarse dentro del término de 60 días contados a partir del 1 de septiembre de 2000 y otro pago de $1,900,000 al vencimiento de un plazo de 30 meses con un interés del 7% anual, el cual estaría garantizado mediante una hipoteca en garantía de pagaré al portador. La cantidad restante de $500,000 debía ser satisfecha mediante un pago al vencimiento del plazo de los 30 meses acordados, pero esta suma no devengaría intereses y también estaría garantizada mediante hipoteca en garantía de pagaré al portador.
En la cláusula quinta del contrato de opción se acordó que los señores Bayron Rodríguez y Rivera Solá culminarían los trámites necesarios para transigir una reclamación existente sobre el predio objeto de la opción dentro del plazo de los 60 días para otorgar la escritura de compraventa.
Vencido el plazo acordado de los 60 días sin que se otorgara la escritura de compraventa, los esposos Quiles y *1197 Sierra presentaron, el 10 de noviembre de 2000, en el Tribunal de Primera Instancia, Sala de Bayamón (T.P.I.), una demanda en cumplimiento específico de contrato. Solicitaron que el Tribunal condenara a los señores Bayron Rodríguez y Rivera Solá a cumplir con todas las cláusulas y condiciones del contrato de opción. En la demanda no se reclamó daños económicos.
Posteriormente, el 5 de marzo de 2001, los esposos Quiles y Sierra presentaron una demanda enmendada en la cual incluyeron nuevamente como demandados a los señores Bayron Rodríguez y Rivera Solá. Incluyeron, ademas, como co-demandado adicional a Nacar Development, Inc. (Nacar). En esta primera demanda enmendada, se alegó que Nacar tenía pleno conocimiento del contrato de opción entre los señores Bayron Rodríguez y Rivera Solá y los esposos Quiles y Sierra. Se alegó, además, que luego de presentada la demanda original, los señores Bayron Rodríguez y Rivera Solá habían otorgado una escritura sobre opción exclusiva de compraventa, con pleno conocimiento de que estaban violando el contrato suscrito entre ellos y los esposos Quiles y Sierra. En la primera demanda enmendada tampoco se reclamaron daños económicos.
Así las cosas, los señores Bayron Rodríguez y Rivera Solá otorgaron, el 11 de abril de 2001, una Escritura de Compraventa ante el Notario Manuel A. Moreda, mediante la cual vendieron, enajenaron y entregaron a Nacar Development, Inc., la propiedad que había sido objeto del contrato de opción vencido entre éstos y los esposos Quiles y Sierra.
Casi un año más tarde, el 1 de marzo de 2002, los esposos presentaron una segunda demanda enmendada en la cual se incluyó como demandados a las siguientes personas naturales y jurídicas:

“(1) Carmen Gladys Bayron, su esposo y la Sociedad Legal de Gananciales (Bayron Rodríguez)

(2) Sigfrido Rivera Solá, su esposa y la Sociedad Legal de Gananciales (Rivera Solá)

(3) Inver Prom, Inc.

(4) Carmen Z. Rojo Torres, su esposo y la Sociedad Legal de Gananciales (Rojo Torres) 

(5) Las Haciendas, S.E. (Las Haciendas)

(6) Nacar Development, Inc. (Nacar)

(7) Edgardo Rivera Maldonado, su esposa y la Sociedad Legal de Gananciales (Rivera Maldonado)

(8) Corporación Profesional o Sociedad Especial compuesta por Edgardo Rivera Maldonado

(9) Angel Marrero Figarella, su esposa y la Sociedad Legal de Gananciales (Marrero Figarella)

(10) Corporación Profesional o Sociedad Especial compuesta por Angel Marrero Figarella

(11) Antonio Moreda Toledo, su esposayla Sociedad Legal de Gananciales (Moreda Toledo)

(12) Manuel A. Moreda, su esposa y la Sociedad Legal de Gananciales (Moreda)

(13) Corporación Profesional o Sociedad Especial compuesta por Antonio Moreda Toledo y Manuel A. Moreda

(14) Compañía de Seguros A, By C”.

*1198 En la segunda demanda enmendada, los esposos Quiles y Sierra alegaron que todos los co-demandados, mediante actuaciones en concierto y común acuerdo, llevaron a cabo una serie de actos alegadamente maliciosos e ilegales que provocaron que los esposos Quiles y Sierra fueron víctimas de la comisión de un fraude o de conducta dolosa. Por primera vez, en la segunda demanda enmendada, reclamaron daños económicos por la suma de $1,500,000.
Luego de varios incidentes procesales, el T.P.I. nombró al Ledo. Reynaldo Quiñones Márquez como Comisionado Especial (Comisionado) mediante orden de 2 de marzo de 2004 y la encomienda le requería considerar todas las controversias que planteaba el caso.
Durante el período de descubrimiento de prueba, el co-demandado Rivera Maldonado presentó una Moción de Desestimación en la que solicitaba se desestimara la Demanda Enmendada en cuanto a él y al Bufete Rivera Maldonado por alegadamente no contener elemento alguno en derecho que expusiera una reclamación que justificara la concesión de un remedio a favor de los demandantes, los esposos Quiles y Sierra.
La moción de desestimación fue declarada con lugar por el T.P.I., pero posteriormente, y ante una moción de reconsideración presentada por los esposos Quiles y Sierra, el Tribunal dejó sin efecto su resolución y mantuvo como co-demandado en el pleito a Rivera Maldonado.
Las partes continuaron con el descubrimiento de prueba con la asistencia y coordinación del Comisionado. Al finalizar dicho descubrimiento de prueba, sometieron un Informe de Conferencia con Antelación a Vistas. A pesar de que el caso estaba listo para la celebración de las vistas evidenciarías ante el Comisionado, varias partes presentaron una serie de escritos y mociones dispositivas. 
Los remedios solicitados por varios de los co-demandados en sus mociones iban dirigidos a solicitar la desestimación de la acción contra ellos porque alegadamente estaba prescrita cuando se radicaron las demandas enmendadas. Otros co-demandados. solicitaron que se dictara Sentencia Sumaria Parcial y alegaron que no existían controversias sustanciales en cuanto a los hechos materiales del caso.
Las partes acordaron con el Comisionado que se paralizarían los procedimientos para disponer de las mociones dispositivas. A esos efectos, acordaron celebrar una vista evidenciaría ante el Comisionado para que las partes pudieran presentar la prueba documental y los testigos necesarios para sostener sus alegaciones y teorías en las mociones dispositivas. Se acordó, además, mediante estipulación por los abogados de las partes, que las determinaciones que hiciera el Comisionado sobre las controversias incluidas en las mociones dispositivas serían finales y firmes en el T.P.I., pero que las partes se reservaban el derecho de acudir en revisión ante el Tribunal de Apelaciones. 
Así las cosas, se celebraron dos vistas evidenciarías, el 6 y 7 de junio de 2005, para que el Comisionado pudiera recibir la evidencia relacionada con las mociones dispositivas. Comparecieron a las vistas todos los co-demandados y el demandante, señor Quiles. Al comienzo de la audiencia, la parte demandante, señor Quiles, estipuló la desestimación con perjuicio de sus reclamaciones contra varios co-demandados. 
El Comisionado recibió vasta prueba documental y testifical durante ambos días de audiencia. Luego de analizar la evidencia y aquilatar la credibilidad de los testigos, el Comisionado emitió su Resolución. En ésta discutió ampliamente cada uno de los planteamientos de las partes y concluyó lo siguiente:

“(1) En cuanto a la Moción de Desestimación del co-demandado Rivera Maldonado de que la demanda no contenía una reclamación que justificara la concesión de un remedio:

a. El Comisionado determinó que las alegaciones de la demanda son específicas y sí contienen una 
*1199
reclamación que podría justificar la concesión de un remedio a favor del señor Quiles. Concluyó que se debe declarar No Ha Lugar esa solicitud de desestimación.

(2) En cuanto a la defensa de prescripción:

a. Determinó que de los hechos del caso se desprende claramente que el señor Quiles y su agente, el Ledo. Ariel Acosta Jusino, desde noviembre de 2000, tuvieron conocimiento de los actos de los co-demandados y de los daños y perjuicios que dichos actos le ocasionaron, por lo que es en ese momento que comenzó a transcurrir el término de un año para ejercitar la causa de acción.

b. Que la causa de acción que pudo tener el señor Quiles contra los co-demandados Marrero Figarella, Rivera Maldonado, Moreda, Moreda Toledo y la Corporación Profesional Moreda & Moreda estaba prescrita al momento en que se incluyó a éstos en el pleito.

c. Que cualquier reclamación contra los co-demandados antes mencionados sería al amparo del Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5141, y estaría prescrita, ya que el término prescriptivo es de un año.

(3) En cuanto a las Mociones de Sentencia Sumaria presentadas por varias partes:

a. Concluyó que existen controversias reales y sustanciales en cuanto a los hechos materiales. Señaló todas las controversias que surgieron al concluir el análisis detallado de todos los documentos producidos en evidencia. 

b. Ante la existencia de controversias en cuanto a hechos esenciales, no procede dictar Sentencia Sumaria en cuanto a los co-demandados con excepción de la co-demandada Carmen Z. Rojo Torres. El Comisionado determinó que la señora Rojo nunca compareció en su carácter personal, sino en su capacidad de Presidente de Nacar Development, Inc. por lo que debe desestimarse la demanda en cuanto a ella. ”
En resumen, el Comisionado señaló en su Informe que se debían continuar los procedimientos únicamente contra los siguientes co-demandados:

“(1) Las Haciendas, S.E.

(2) Nacar Development, Inc.

(3) Carmen Gladys Boy ron

(4) Sigfrido Rivera Solá”.

El Comisionado presentó su Informe al T.P.I. mediante Moción de 20 de octubre de 2005. El tribunal de instancia, basándose en el Informe de Comisionado, emitió una Sentencia Parcial Final el 31 de octubre de 2005 mediante la cual acogió las determinaciones del Comisionado y ordenó la continuación de los procedimientos ante el Comisionado contra los cuatro co-demandados que éste había recomendado en su Informe.
Inconforme con tal determinación, los esposos Quiles y Sierra nos solicitan la revocación de la sentencia parcial final. Nos plantean que erró el T.P.I. al acoger las determinaciones y conclusiones del Comisionado y desestimar la demanda incoada por ellos contra varios de los co-demandados. Entienden que el período de prescripción contra los co-demandados no había prescrito al momento de presentar la segunda demanda enmendada.
*1200 Luego de examinar el voluminoso expediente, resolvemos confirmar la sentencia. Veamos.
II
A. Nombramiento de un Comisionado Especial
La Regla 41.1 de Procedimiento Civil, 32 L.P.R.A. Ap. HI, dispone en lo pertinente que:

“El Tribunal en que estuviere pendiente un pleito o procedimiento podrá nombrar un comisionado especial en relación con dicho pleito o procedimiento. ”

Por otro lado, la Regla 41.5 de Procedimiento Civil, supra, establece lo siguiente:

“(a) Contenido y presentación:

El comisionado preparará un informe sobre todos los asuntos encomendádosle por la orden del tribunal y si se le exigiere que haga determinaciones de hechos y conclusiones de derecho, las expondrá en el informe...

(b) Aprobación:

En todos los casos, el tribunal aceptará las determinaciones de hechos del comisionado, a menos que sean claramente erróneas...

(c) Estipulación en cuanto a las determinaciones de hechos:

... [cjuando las partes estipularen que las determinaciones de hechos del comisionado sean finales, solamente se considerarán en lo sucesivo las cuestiones de derecho que surjan del informe. ”

El comisionado especial es un funcionario designado por el tribunal y en quien éste delega determinados poderes para que formule ciertas determinaciones o conclusiones en un proceso. R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho Procesal Civil, Michie de P.R., Inc., Puerto Rico, 1997, pág. 262.
El propósito en la designación de un comisionado especial consiste en facilitar la labor judicial. íd., pág. 263. La función del comisionado es asistir al juzgador. Regla 41 32 L.P.R.A. Ap. El.
El comisionado tiene el poder delegado de reglamentar los procedimientos en toda vista celebrada ante él. Para ello, se le ha reconocido tradicionalmente una gran discreción. J. Cuevas Segarra, Tratado de Derecho Procesal Civil, Publicaciones J.T.S., Puerto Rico, 2000, T. II, pág. 670.
De acuerdo a las Reglas de Procedimiento Civil, supra, el comisionado puede exigir que se produzca ante él cualquier prueba sobre los asuntos comprendidos en la encomienda, incluyendo la producción de todos los libros, papeles, comprobantes, documentos y escritos pertinentes. Estos poderes son incidentales y necesarios a su encomienda, pues de lo contrario, el comisionado no podría descargar adecuadamente sus obligaciones. íd.
El comisionado puede decidir sobre la admisibilidad de la prueba. Además, puede juramentar y examinar testigos, así como también, citar a las partes en el pleito y examinarlas bajo juramento. íd., pág. 671. En caso de que un asunto sea debidamente encomendado a un comisionado, el informe que éste rinde no es final. Regla 40, supra. Las partes pueden estipular que las determinaciones de hechos sean finales. Regla 41 (5)(b) de Procedimiento Civil, 32 L.P.R.A. Ap. IH.
*1201 Los Tribunales no pueden renunciar a su función adjudicativa, que es indelegable. Caraballo Ramírez v. Acosta, 104 D.P.R. 474, 485 (1975). Los Tribunales son los facultados para resolver los casos y controversias. Art. V., Sec. 1, Constitución del Estado Libre Asociado de Puerto Rico; Vélez Ruiz v. E.L.A., 111 D.P.R. 752 757 (1981).
Las partes no pueden privar al Tribunal de Primera Instancia de su función adjudicativa y corresponde al Juez o Jueza pasar juicio sobre el Informe del Comisionado y de la determinación del Tribunal, podrán recurrir en alzada ante el Tribunal de Apelaciones. Véase, Ley de la Judicatura, 4 L.P.R.A. secs. 24y(a), Sup. Acum. 2006.
B. Deferencia al Comisionado Especial
Es norma firmemente establecida en nuestra jurisdicción la regla de deferencia a las determinaciones de hechos del Comisionado Especial, igual que en el caso de los jueces de instancia. Esta norma se aplica exclusivamente a testimonios orales vertidos en su presencia, ya que es éste quien observa la actitud de los testigos, su forma de declarar, sus gestos, y en general, su conducta al prestar declaración. In re: Ortiz Brunet, 172 D.P.R. 542, 549 (2000); Castro v. Meléndez, 82 D.P.R. 573, 576 (1961).
A esos efectos, la Regla 41.5, supra, dispone que el tribunal aceptará las determinaciones de hechos del comisionado "a menos que sean claramente erróneas". Véase, además, Levy v. Aut. Edif. Públicos, 135 D.P R. 382, 400 (1994).
Cuando esas determinaciones están sostenidas por la prueba que obra en el expediente, el tribunal revisor no intervendrá con éstas, ausente de una demostración de pasión, prejuicio, parcialidad o error manifiesto en su apreciación. In re: Rodríguez Feliciano, 2005 J.T.S. 136, 164 D.P.R. _ (2005); In re: González Ortiz, 2004 J.T.S. 90, 162 D.P.R. _ (2004); In re: Soto Colón, 155 D.P.R. 623, 649 (2001); In re: Arroyo Fernández, 133 D.P.R. 364, 371 (1993).
No obstante, cuando estamos ante prueba documental, el tribunal apelativo está en igual posición que el Comisionado Especial para hacer sus propias determinaciones. In re: González Carrasquillo, 2005 J.T.S. 83, 164 D.P.R. _ (2005).
C. La prescripción como defensa en una causa de acción
En nuestra jurisdicción, la prescripción constituye una defensa afirmativa. López v. J. Gus Lallande, 144 D.P.R. 774, 792 (1998); Meléndez v. El Vocero de Puerto Rico, 144 D.P.R. 389, 394 (1997).
La Regla 6.3 de las de Procedimiento Civil, supra, titulada "defensas afirmativas", establece en lo pertinente que:
“Al responder a una alegación precedente, las siguientes defensas deberán expresarse afirmativamente: transacción, .... prescripción adquisitiva o extintiva, renuncia ... ”.
Nuestro más alto foro judicial ha establecido que toda materia constitutiva de excusa o defensa afirmativa -incluso la prescripción-, debe ser oportuna y afirmativamente formulada mediante alegación responsiva; de lo contrario, se renuncia. Kontrick v. Ryan, 157 L.Ed. 2d 867, 881 (2003); Odriozola v. S. Cosmetic Dist. Corp., 116 D.P.R. 485, 506 (1985); Ramos v. Trans Oceanic Ins. Co., 103 D.P.R. 298, 300 (1975).
Como regla general, salvo contadas excepciones, la referida defensa deberá exponerse en la alegación respondiente que se haga contra una reclamación. Texaco P.R., Inc. v. Díaz, 105 D.P.R. 248, 250 (1976). Así, la prescripción de una acción civil acarrea la desestimación de la demanda correspondiente. Rimco, Inc. v. Pérez y *1202 Cía. de P.R., Inc., 148 D.P.R. 60, 65 (1999).
D. Las acciones de daños bajo el Código Civil de Puerto Rico
En nuestra jurisdicción, la responsabilidad civil derivada de actos u omisiones culposas o negligentes se rige por lo dispuesto en el Artículo 1802 del Código Civil, supra. Hernández v. Televicentro de P.R., 2006 J.T.S. 151, 168 D.P.R. _ (2006); Admor. F.S.E. v. ANR Construction Corp., 2004 J.T.S. 162, 163 D.P.R. _ (2004); Montalvo v. Cruz, 144 D.P.R. 748, 755 (1998).
Como es sabido, para que exista responsabilidad bajo este precepto, es necesario que ocurra un daño, una acción u omisión culposa o negligente y la correspondiente relación causal entre el daño y la conducta culposa o negligente. Admor. F.S.E. v. ANR Construction Corp., supra; Toro Aponte v. E.L.A., 142 D.P.R. 464, 472-73 (1997); J.A.D.M. v. Centro Com. Plaza Carolina, 132 D.P.R. 785, 795(1993).
Por su parte, el Art. 1858, 31 L.P.R.A. sec. 5298, dispone que las acciones para exigir responsabilidad por culpa o negligencia, al amparo del Art. 1802, supra, tienen un término prescriptivo de un año y que el período prescriptivo de esta acción comienza a transcurrir desde el momento en que el agraviado tiene conocimiento del daño sufrido y de quién es el autor del mismo, ya que es en este momento en que conoce los elementos necesarios para poder ejercitar efectivamente su causa de acción.
m
El expediente completo del recurso de apelación, que hemos podido estudiar y evaluar con detenimiento, incluye miles de páginas de apéndices cuyo contenido sustenta una por una las determinaciones de hechos del Comisionado nombrado por el T.P.I. mediante orden de 2 de marzo de 2004.
Luego de evaluar todas las transcripciones de las audiencias celebradas ante el Comisionado y de revisar todos los documentos presentados y admitidos como evidencia en dichas vistas, no encontramos razón alguna para intervenir con las determinaciones de hechos formuladas por el Comisionado en su Informe y acogidas en su totalidad por el T.P.I. en su Sentencia Parcial Final. Por los fundamentos que expondremos a continuación, entendemos que ninguno de los errores señalados por los esposos Quiles y Sierra fueron cometidos.
Se desprende de los documentos que obran en el expediente que el T.P.I. designó, con la anuencia de todas las partes en el pleito, al Ledo. Reynaldo Quiñones Márquez como Comisionado Especial. El licenciado Quiñones es, además de abogado, contador público autorizado (C.P.A.), Certified Valuation Analyst, Certified Fraud Examiner y árbitro certificado. El tribunal de instancia tomó su determinación de nombrar al Comisionado a base de la complejidad de las controversias y los aspectos de contabilidad y finanzas presentes en el caso. [6] La orden emitida expresamente señala que el Comisionado tendría y ejercería varios poderes y facultades, a tenor con las disposiciones de las Reglas de Procedimiento Civil, supra.
Así las cosas, el Comisionado celebró varias audiencias y recibió múltiples mociones de cada parte. Dirigió y colaboró con las partes en la organización del descubrimiento de prueba y luego de aquilatar la prueba testifical y evaluar la prueba documental recibida, llegó a las determinaciones y conclusiones que discutiremos a continuación.
A. En cuanto a la moción de desestimación del co-demandado Rivera Maldonado
El Comisionado señala en su Informe que estudió la primera demanda enmendada y que ésta claramente revela que sí se le imputan al co-demandado Rivera Maldonado actos específicos de interferencia torticera con relaciones contractuales, hechos con el objetivo de violar derechos contractuales, comisión de hechos en su capacidad personal y profesional para su beneficio económico y otros actos relacionados. Señala, además, que *1203 contrario a lo alegado por el co-demandado Rivera Maldonado, esas alegaciones específicas sí exponen una reclamación que podría justificar la concesión de un remedio a favor de la parte demandante, los esposos Quiles y Sierra. Concluyó el Comisionado que se debía declarar No Ha Lugar la Moción de Desestimación presentada por este co-demandado. 
Al revisar la primera demanda enmendada presentada el 5 de marzo de 2001, notamos que en ésta no se incluyó al co-demandado Rivera Maldonado. 
Entendemos que el Comisionado se refería a la segunda demanda enmendada, presentada el 1 de marzo de 2002. Es en ésta que se hace referencia directa a las alegaciones del co-demandado Rivera Maldonado. En específico, la alegación número 8 señala que:

“8. ...Se incluye al co-demandado Edgardo Rivera-Maldonado por ser responsable en su carácter personal por los daños alegados en la presente demanda, ya que directa o indirectamente participó en la comisión de los actos que resultaron en su incumplimiento con unas obligaciones contractuales; o de alguna forma ha sido responsable por los daños alegados en la presente demanda. ” 

Luego, en la alegación número 91, se expresó que:

“91. Como resultado de las actuaciones realizadas en concierto y común acuerdo por los co-demandados ... Edgardo Rivera-Maldonado ... las partes co-demandantes Ricardo Quiles-Rivera y Blanca Sierra-González fueron víctimas de la comisión de un fraude o de conducta dolosa... ”. 

Nuestro más alto foro judicial ha establecido que, ante la solicitud de desestimación de una demanda bajo el fundamento de que la misma deja de exponer una reclamación que justifique la concesión de un remedio, el tribunal debe tomar como ciertos todos los hechos alegados e interpretar las aseveraciones de la demanda en la forma más favorable posible para el demandante. Candal Vicente v. CT Radiology Office, Inc., 112 D.P.R. 227 230-231 (1981).
Concluimos que fue correcta la determinación del Comisionado de declarar No Ha Lugar, bajo ese fundamento específico, la Moción de Desestimación presentada por el co-demandado Rivera Maldonado. Hemos podido corroborar que, en efecto, en la segunda demanda enmendada se incluyeron alegaciones específicas sobre éste exponiendo así una reclamación que podría justificar la concesión de un remedio. Más adelante expondremos el fundamento correcto por el que se debe declarar Ha Lugar la referida moción.
B. En cuanto a la prescripción de la acción
Nuestro Tribunal Supremo ha establecido que la interposición de una demanda no interrumpe el término prescriptivo contra otros nuevos demandados que no son partes en la relación contractual y que no formaron parte de la reclamación original. Rodríguez v. Syntex, Inc., 2003 J.T.S. 147, 160 D.P.R. _ (2003).
Asimismo ha señalado que la prescripción es una institución de derecho sustantivo, regulada por el Código Civil de Puerto Rico, que constituye una forma de extinción de un derecho debido a la inercia en ejercer el mismo durante un término determinado. Santiago v. Ríos Alonso, 156 D.P.R. 181, 188 (2002); Galib Frangie v. El Vocero de P.R., 138 D.P.R. 560, 566 (1995); García Aponte et. al. v. E.L.A. et. al., 135 D.P.R. 137, 142-143 (1994).
Con esto en mente, pasamos a evaluar la cronología de hechos suscitados en el presente caso para determinar qué co-demandados levantaron a tiempo la defensa de prescripción. Del expediente ante nos surge que:

*1204
“(1) La demanda original fue presentada el 10 de noviembre de 2000. 

(2) Ninguno de los demandados contestó la demanda original.

(3) La primera demanda enmendada fue presentada el 5 de marzo de 2001. [12]

(4) La co-demandada Carmen Gladys Bay ron contestó la primera demanda enmendada el 25 de mayo de 2001. 
 En su alegación responsiva negó las alegaciones de la demanda y levantó ciertas defensas, entre ellas la de prescripción.

(5) El co-demandado Nacar Development, Inc. contestó la primera demanda enmendada. 
 En su contestación, levantó varias defensas afirmativas, pero no la de prescripción. Además, reconvino contra los esposos Quiles y Sierra.

(6) La segunda demanda enmendada fue presentada el 1 de marzo de 2002. 

(7) Los co-demandados Moreda, Moreda Toledo, y la corporación profesional Moreda & Moreda contestaron la segunda demanda enmendada el 29 de diciembre de 2003. 
 En su contestación negaron ciertas alegaciones, aceptaron otras y levantaron varias defensas, entre ellas la de prescripción. 

(8) Las co-demandadas Carmen Z. Rojo Torres (Carmen Torres Figueroa), Las Haciendas, S.E., y Nacar contestaron la segunda demanda enmendada el 30 de diciembre de 2003 y reconvinieron. 
 En su contestación no levantaron la defensa de prescripción.

(9) La co-demandada Carmen Gladys Bay ron contestó la segunda demanda enmendada el 26 de febrero de 2004, pero no levantó la defensa de prescripción. 

(10) Los co-demandados Rivera Sold, Inver Prom, Inc., la Corporación Profesional compuesta por Marrero Figarella y su Sociedad de Bienes Gananciales contestaron la segunda demanda enmendada y reconvinieron el 27 de febrero de 2004. En su contestación levantaron varias defensas, entre ellas la de prescripción. 

(11) El co-demandado Rivera Maldonado no contestó la segunda demanda enmendada, pero presentó una Moción de Desestimación el 26 de febrero de 2004. [21] En su alegación número nueve expresa que la referida demanda está prescrita. ”

De los eventos que hemos mencionado, el Comisionado concluyó lo siguiente sobre cada uno de los co-demandados en el pleito:
1. Los co-demandados Bayron Rodríguez y Rivera Solé
Ambos co-demandados fueron incluidos en la demanda original presentada el 10 de noviembre de 2000. Para esa fecha sólo habían transcurrido diez días desde la fecha de vencimiento del contrato de opción a compra firmado entre éstos y los esposos Quiles y Sierra. La causa de acción contra estos co-demandados se ejerció dentro del plazo de un año establecido por el Artículo 1802 del Código Civil de Puerto Rico, supra, por lo que no estaba prescrita al momento de presentarse la demanda original. Esto, además, fue estipulado por los abogados de las partes en la vista ante el Comisionado.
Ante estos hechos, concluimos que fue correcta la determinación del Comisionado de no desestimar contra estos dos co-demandados.
*1205 2. Las co-demandadas Carmen Z. Rojo, Nacar y Las Haciendas.
Originalmente, la co-demandada Nacar compareció al pleito presentando la contestación a la primera demanda enmendada. Al examinar el documento que obra en el expediente encontramos que ésta levantó un sinnúmero de defensas afirmativas pero no la de prescripción. Luego, las tres co-demandadas comparecieron mediante escrito titulado Contestación a demanda enmendada" y contestaron las alegaciones de la segunda demanda enmendada conjuntamente con una reconvención. En ese escrito levantaron varias defensas; sin embargo, tampoco levantaron la defensa afirmativa de prescripción.
El Comisionado concluyó que las alegaciones de la demanda son claras y precisas por lo que, basado en la Regla 6.3 de Procedimiento Civil, supra, y en toda la jurisprudencia aplicable, se debía declarar No Ha Lugar la solicitud de estas tres co-demandadas de que la acción contra ellas estaba prescrita.
Concurrimos con la determinación del Comisionado. Es norma jurisprudencial y jurídica en nuestro ordenamiento que la defensa afirmativa de prescripción debe levantarse en una alegación respondiente a la primera oportunidad posible y en forma clara, expresa y específica. Olmeda Nazario v. Sueiro Jiménez, 123 D.P.R. 294, 299 (1989); Ramos v. Trans Oceanic Ins. Co., supra, pág. 300.
En el presente caso, las co-demandadas contestaron la segunda demanda enmendada, pero en ningún momento levantaron la referida defensa. Es forzoso concluir que renunciaron a ésta por lo que la causa de acción en su contra no esta prescrita. La determinación del Comisionado fue correcta.
3. El co-demandado Rivera Maldonado
El Comisionado informó en su resolución que solicito al co-demandado que contestara la segunda demanda enmendada y que éste nunca lo hizo. Al revisar la transcripción de la vista ante el Comisionado, encontramos que el co-demandado Rivera Maldonado señaló expresamente en la audiencia que había contestado la demanda. Hemos revisado el Apéndice y no encontramos ninguna contestación sometida por el señor Rivera Maldonado a la segunda demanda enmendada.
A pesar de que el señor Rivera Maldonado no contestó la segunda demandada enmendada según le fue solicitado por el Comisionado, éste había presentado previamente una Moción de Desestimación que hemos tenido a bien revisar cuidadosamente. La moción fue presentada el 26 de febrero de 2004 ante el T.P.I. y, en su alegación número nueve, expresamente señala:

(9) Surge de la faz de la demanda enmendada el hecho de la prescripción de la misma en cuanto a la persona del co-demandado Ledo. Edgardo Rivera Maldonado se refiere, ya que la última gestión que éste realizó relacionada con la parte demandante fue la carta notificándole la resolución del contrato de opción. Dicha carta se envió a fines de noviembre del año 2000 y la demanda enmendada, incluyendo por primera vez. al Ledo. Edgardo F. Rivera Maldonado como co-demandado, se radicó el 1ro de marzo de 2002. ” 

Nuestro Tribunal Supremo ha señalado que, "como regla general, salvo contadas excepciones, la referida defensa deberá exponerse en la alegación respondiente que se haga contra una reclamación". Álamo Pérez v Supermercado Grande, Inc., 2002 J.T.S. 124, 158 D.P.R. _ (2002); Texaco P.R., Inc. v. Díaz, supra, pág. 250.
Entendemos que la moción de desestimación presentada por el co-demandado Rivera Maldonado al amparo de la Regla 10.2 de Procedimiento Civil, supra, en el presente caso es una de esas "contadas excepciones". Sobre esto, el tratadista Cuevas Segarra nos señala que: "la Regla 10.2 de Procedimiento Civil permite al demandado solicitar que se desestime la demanda en su contra cuando es evidente, de las alegaciones de la demanda, que prosperará alguna defensa afirmativa". Cuevas Segarra, op. cit., T. IV, pág. 100.
*1206 Como pudimos apreciar de la moción presentada por el co-demandado Rivera Maldonado, éste solicitó la desestimación de la causa de acción en su contra, pues, entre otras cosas, estaba prescrita. No podemos pasar por alto ese señalamiento donde el co-demandado levantó expresamente la defensa de prescripción.
Es necesario concluir que el co-demandado Rivera Maldonado no ha renunciado bajo la Regla 6.3, supra, a la defensa afirmativa de prescripción. Por ello, es correcta la determinación del Comisionado a los efectos de que orocede la moción de desestimación y de sentencia sumaria presentada por el señor Rivera Maldonado bajo este fundamento.
4. Los co-demandados Marrero Figarella, su esposa y la sociedad de gananciales compuesta por ambos; Moreda Toledo; Moreda, su esposa y la sociedad de gananciales compuesta por ambos; la Corporación ’ ’rofesional Moreda & Moreda.
El Comisionado determinó que, para poder concluir si la causa de acción contra estos co-demandados había prescrito, había que examinar ciertos eventos relacionados con el presente caso. Para ello, nos señala en su nforme, preparado luego de haber escuchado toda la prueba testifical presentada y examinado la prueba documental que se le entregó en las audiencias celebradas, los siguientes eventos críticos: 

“(1) El 26 de agosto de 2000 se firmó un Contrato de Opción de Compraventa entre el demandante Quiles y los co-demandados Bayron Rodríguez y Rivera Solá para la compra de la propiedad.

(2) Durante el período de tiempo en que negociaba con Bayron Rodríguez y Rivera Solá (el mes de agosto de 2000) y antes de haber sido firmado el Contrato de Opción de Compraventa, Quiles llevó a cabo negociaciones con Rojo y/o Haciendas y Nacar, para venderle la propiedad.

(3) El 16 de agosto de 2000 Quiles firmó un Contrato de Opción de Compraventa con Nacar para la venta de la propiedad.

(4) En una reunión celebrada el 24 de octubre de 2000 (según consta de la Declaración Jurada suscrita por el Ledo. Ariel Acosta Jusino el día 23 de enero de 2002), 
 Marrero Figarella y Rivera Maldonado le informaron verbalmente ... que "no estaban de acuerdo en darle a Quiles tiempo adicional para ejercer la Opción de Compraventa a menos que adelantara la suma de $400,000...".

(5) En dicha reunión_Rivera Maldonado le informó al Ledo. Ariel Acosta Jusino ... que después del 1 de noviembre de 2000 Quiles no tenía nada que buscar, no le voy a dar un día más, no le voy a dar ni una hora más". (Véase declaración jurada)

(...)

(7) El 31 de octubre de 2000, el Ledo. Ariel Acosta Jusino "le planteó a Quiles la situación..." (véase declaración jurada)

(...)

(9) El 10 de noviembre de 2000 se radica la Demanda Original y en ella solamente se incluye como co-demandados a Bayron y a Rivera Solá.

(10) El 18 de noviembre de 2000, Nacar otorga Escritura de Opción Exclusiva de Compraventa de Inmueble con los co-demandados Bayron y Rivera Solá...

*1207
(H) El 3 de marzo [5 de marzo] de 2001 se radica la Primera Demanda Enmendada... se incluyó como co-demandada a Nacar.

(12) El 11 de abril de 2001, Bayron y Rivera Sold otorgaron una Escritura de Compraventa y Constitución de Hipoteca [28] mediante la cual vendían la propiedad a Nacar...

(13) El 1ro de marzo de 2002 ...se radica la Segunda Demanda Enmendada incluyendo por primera vez a los co-demandados Marrero Figarella, Rivera Maldonado, Moreda Toledo, Moreda, CP Moreda & Moreda, Inver, Rojo y Haciendas, reclamando por primera vez daños económicos. ”

Es correcta la apreciación que hace en esta etapa el Comisionado al determinar que no fue sino hasta que se presentó esa Segunda Demanda Enmendada que se incluyó a los mencionados co-demandados. Ante esto, debemos determinar cuándo comenzó a decursar el término prescriptivo a favor de éstos.
Los co-demandados plantearon en todas sus mociones que la situación ante nos se rige por el término o plazo prescriptivo provisto para las acciones torticeras bajo el Artículo 1802, supra. Alegan los co-demandados que el período de prescripción comenzó a principios del mes de noviembre, fecha en la cual le enviaron varias cartas al señor Quiles notificándole que éste no había cumplido con los términos de la opción y que no le concederían prórroga a menos que pagara los $400,000 adicionales solicitados.
Por su parte, el señor Quiles alega que el plazo prescriptivo comenzó el 11 de abril de 2001 cuando los dueños del inmueble Bayron Rodríguez y Rivera Solá efectivamente vendieron a Nacar la finca de 20 cuerdas. Es en ese momento que, según el señor Quiles, ocurrió el daño, pues desde entonces los dueños del inmueble no podrían entregarle a éste la finca objeto del Contrato de Opción de Compraventa de 26 de agosto de 2000.
Para evaluar ambos planteamientos, recurrimos a los documentos que obran en el expediente del recurso de apelación. Primeramente, debemos hacer referencia a la carta fechada 2 de noviembre de 2000 que fue enviada por los co-demandados Rivera Maldonado y Marrero Figarella al representante legal del señor Quiles, el licenciado Ariel Acosta Jusino. En dicha carta expresaron que:

“Cabe recordarles que en cuanto al Contrato de 26 de agosto de 2000, el mismo es inexistente en derecho, porque su cliente nunca pagó la cantidad acordada al promitente...

Luego, al evaluar la declaración jurada sometida por el propio abogado del señor Quiles encontramos que éste en varias ocasiones señala haber notificado a su cliente de los acontecimientos ocurridos y de que los ahora co-demandados Marrero Figarella y Rivera Maldonado no le otorgarían prórroga alguna al vencer el término de la opción el 1 de noviembre de 2000. En específico, el licenciado Acosta Jusino expresó que:

En ese momento se le planteó al Sr. Quiles la situación y surgieron las dudas al Sr. Quiles en términos de cómo proceder ... Le dije además que estando dentro de la negociación debería ser otro abogado quien iniciara cualquier acción legal o judicial en contra de ellos para exigir el cumplimiento del contrato de opción. A lo que el Sr. Quiles me contestó que hablaría con el Ledo. Héctor Santiago. ” 

Luego de un análisis ponderado de todo lo antes expuesto, nos parece correcta la conclusión del Comisionado. Este determinó que surge claramente de los hechos del caso que el señor Quiles:
“]t]enía o debió haber tenido pleno conocimiento de las alegadas intenciones de Marrero Figarella y Rivera Maldonado de no cumplir con el Contrato de Opción de Compraventa (en representación de sus clientes) y del posible envolvimiento de Moreda Padre, Moreda Hijo, CP Moreda & Moreda en las negociaciones dirigidas a quejuese Rojo y no Quiles quien adquiriera la propiedad directamente de los vendedores. ”
*1208 Al examinar, además, la transcripción de la deposición tomada al señor Quiles el viernes, 17 de mayo de 2002 encontramos evidencia que sustenta la conclusión del Comisionado. En la deposición, el señor Quiles admitió raber conocido de la transacción de los co-demandados con la co-demandada Carmen Z. Rojo en noviembre de 2000. En lo pertinente, citamos de la transcripción lo siguiente:
Ledo. Marrero Figarella
P. ... ¿no recuerda la fecha, cuándo usted se entera[?]
Deponente (señor Quiles)
R. Bueno, yo me entero... para fines de noviembre creo que me enteré.
Ledo. Marrero Figarella
P. Noviembre del año 2000.
Deponente
R. Del año 2000.
Ledo. Marrero Figarella
P. ¿Cómo se enteró?
Deponente
R. No recuerdo cómo fue que me enteré.
Si las actuaciones de los co-demandados constituyeran actos y acciones torticeras al amparo del Artículo 1802, supra, tal y como se les imputa en la Segunda Demanda Enmendada, concurrimos con el Comisionado en que el término para ejercer la causa de acción por parte del señor Quiles comenzó a correr desde el mes de noviembre de 2000. El mismo señor Quiles admite haber conocido de la compraventa que le impediría adquirir el inmueble objeto del Contrato de Opción. Es a principios del mes de noviembre, como pudimos corroborar en el expediente, que el señor Quiles tuvo pleno conocimiento de los actos de los co-demandados y de los daños y perjuicios que dichos actos le ocasionaron, por lo que es en ese momento que comenzó a transcurrir el término de un año para ejercitar su causa de acción.
Es forzoso concluir que la causa de acción que pudo tener el señor Quiles contra los co-demandados Marrero Figarella, Rivera Maldonado, Moreda, Moreda Toledo y CP Moreda & Moreda estaban prescritas al momento en que se trajo a estas partes al pleito en la Segunda Demanda Enmendada presentada en marzo de 2002.
Sostenemos la recomendación del Comisionado de desestimar la demanda contra los co-demandados antes mencionados por estar prescrita la causa de acción.
Correspondía al Comisionado, designado por el T.P.I. recibir la prueba, así como evaluar y dirimir la evidencia conflictiva. No hemos encontrado nada en el expediente que nos anime a intervenir con las determinaciones de hechos formuladas por el Comisionado y avaladas por la Jueza de Instancia en su sentencia parcial. Están apoyadas en la evidencia presentada y admitida la cual hemos podido evaluar y analizar con detenimiento. La presunción sobre su corrección no ha sido rebatida.
*1209 Del estudio minucioso del expediente, hemos podido constatar que al señor Quiles no le asiste la razón en sus planteamientos. Concluimos que no erró el T.P.I. al acoger las determinaciones del Comisionado, pues están sustentadas con evidencia testifical y documental.
No erró el T.P.I. al desestimar la demanda por prescripción a favor de:
“(1) Angel Marrero Figarella, su esposa y la Sociedad Legal de Gananciales

(2) Antonio Moreda Toledo

(3) Manuel A. Moreda, su esposa y la Sociedad Legal de Gananciales

(4) Corporación Profesional Moreda & Moreda

(5) Inver Prom, Inc.

(6) Edgardo Rivera Maldonado”.

Tampoco erró el T.P.I. al declarar Ha Lugar la Moción de Sentencia Sumaria presentada por la co-demandada Carmen Z. Rojo Torres (Carmen G. Torres Figueroa), ya que ésta no compareció en su carácter personal en ninguno de los actos alegados. Así fue reconocido por el demandante, señor Quiles, en sus escritos y alegaciones, por lo que tampoco se cometieron los errores números nueve y diez señalados por éste.
No erró el T.P.I. al denegar la petición de desestimación de las siguientes co-demandadas por no haber levantado la defensa de prescripción:

“(I) Las Haciendas, S.E.

(2)Nacar Development, Inc. ”

Finalmente, no erró el T.P.I. al ordenar la continuación de los procedimientos contra los siguientes co-demandados:

“(1) Nacar Development, Inc.

(2) Las Haciendas, S.E.

(3) Carmen Gladys Bayron

(4) Sigfrido Rivera Soló”.

TV

Por todo lo antes expuesto, se confirma la Sentencia Parcial Final emitida por el Tribunal de Primera Instancia el 31 de octubre de 2005 y se devuelve el caso al T.P.I. para la continuación de los procedimientos.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria.
Leda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones
*1210 ESCOLIOS 2007 DTA 65
1. En todos los documentos que hemos podido revisar se hace referencia a la Sra. Carmen Gloria Torres Figueroa como Carmen Z. Rojo Torres.
2. Véase Informe Inicial del Comisionado Especial en Relación a Mociones Dispositivas Radicadas por las Partes, págs. 8-9 contenido en el Apéndice del Escrito de la Parte Apelada Carmen G. Torres Figueroa, págs.. 1439-1440.
3. Véase Transcripción de vista en su fondo de lunes, 6 de junio de 2005, págs. 298-305 y 339-341 contenida en el Apéndice de la Apelación, págs. 4,831 a 4,838 y 4,872 a 4,874.
4. Véase Informe Inicial del Comisionado Especial en Relación a Mociones Dispositivas Radicadas por las Partes, págs. 12-13 contenido en el Apéndice del Escrito de la Parte Apelada Carmen G. Torres Figueroa, págs. 1443-1444. Véase, además, Transcripción de vista en su fondo de lunes, 6 de junio de 2005, págs. 263-273 contenida en el Apéndice de la Apelación, págs. 4,796-4,805.
5. Véase Informe Inicial del Comisionado Especial en Relación a Mociones Dispositivas Radicadas por las Partes, pags. 35-36 contenido en el Apéndice del Escrito de la Parte Apelada Carmen G. Torres Figueroa, págs. 1466-1467.
6. Véase Orden Designando Comisionado Especial de 2 de marzo de 2004, notificada a las partes el 8 de marzo de 2004. Apéndice del Escrito de Apelación, pág. 412.
7. Véase Informe Inicial del Comisionado Especial en Relación a Mociones Dispositivas Radicadas por las Partes, (Informe del Comisionado) págs. 13 a 14 contenido en el Apéndice del Escrito de la Parte Apelada Carmen G. Torres Figueroa, págs. 1444 a 1445.
8. Véase Demanda Enmendada, presentada el 5 de marzo de 2001. Apéndice del Escrito de Apelación, págs. 15-19.
9. Véase Demanda Enmendada, presentada el 1 de marzo de 2002. Apéndice del Escrito de Apelación, pág. 41.
10. íd., pág. 71.
11. Véase Apéndice del Escrito de Apelación, págs. 1-12.
12. íd., págs. 15-19.
13. íd., págs. 22-24.
14. A pesar de que en sus determinaciones de hechos el Comisionado señaló que Nacar no contesto la demanda, (Informe del Comisionado, supra, pág. 15) al revisar el expediente encontramos un documento titulado " Contestación a Demanda Enmendada" presentado por Nacar, a través de su representante legal. Véase Apéndice del Escrito de Apelación, págs. 25-37. No podemos constatar la fecha de la presentación de dicho escrito, pues no tiene sello de la Secretaria del T.P.I. y tampoco señala la fecha en que se redactó, presentó o envió copia a las demás partes en el pleito.
15. íd., págs. 38-322.
16. íd., págs. 349-370.
17. íd., pág. 364, defensa afirmativa número cuatro.
18. íd., págs. 371-387.
19. íd., págs. 392-398.
20. íd., págs. 400-409. Véase, en específico, alegación número 18, a la pág. 407.
*1211 21. Id., págs. 389-391.
22. Informe Comisionado, supra, pág. 20.
23. Transcripción de la vista en su fondo de 6 de junio de 2005. Apéndice del Escrito de Apelación, pág. 4,789.
24. Debemos aclarar que el Comisionado en su Informe señala que la moción fue presentada el 5 de abril de 2004. Al revisar el expediente encontramos que la moción presentada por el co-demandado Rivera Maldonado el 5 de abril de 2004 se titula "Moción solicitando se dicte sentencia parcial de desestimación". Esta moción sólo contiene dos alegaciones y mnguna de ellas se refiere a la defensa de prescripción. Véase Apéndice del Escrito de Apelación, págs. 417-418.
25. íd., pág. 390.
26. Véase Informe del Comisionado, págs. 21-24.
27. Hemos corroborado todos los hechos señalados por el Comisionado en esta parte de su Informe al examinar minuciosamente la Declaración Jurada del Ledo. Ariel Acosta Jusino contenida en el Apéndice del Escrito de la Parte Apelada Carmen G. Torres Figueroa, págs. 219-233.
28. Véase, Apéndice del Escrito de Apelación, págs. 272-291.
29. íd., pág. 245.
30. íd, págs. 231-232.