SANDRA ORTEGA y OTRO, demandantes y recurridos, *v.* DR. ANTONIO POU y OTROS, demandados peticionarios y recurrentes.

*Número:* CE-93-318          *Resuelto:* 7 de abril de 1994

*Iván O. González Cruz, Igor J. Domínguez* y *José A. González Villamil*, abogados de los recurrentes; *Jesús Santiago Malavet* y *Carmen Rivera Mercado*, de *Santiago, Malaret & Santiago*, abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

El 9 de marzo de 1992 Sandra Ortega y su esposo Luis A. Santiago Marrero demandaron por impericia médica al Dr. Antonio Pou y otros. Alegaron que el 17 de octubre de 1990 ella se sometió a una esterilización ambulatoria con el doctor Pou, y varios meses después descubrió que estaba embarazada. El 17 de septiembre dio a luz un niño. El doctor Pou contestó e invocó, entre otras, la defensa de prescripción; después solicitó la desestimación.

El 17 de mayo de 1993 el Tribunal Superior, Sala de San Juan (Hon. José E. Broco Oliveras, Juez), se negó a desestimarla. Expresamente concluyó que, "[e]s a partir del nacimiento que se configura la nueva situación que incluye obligaciones económicas y de otra naturaleza que se intentó evitar con la esterilización". *Exhibit* I, pág. 1. En reconsideración, se reiteró. Mediante una orden para mostrar causa, a solicitud del doctor Pou, revisamos.

En síntesis, nos argumenta que el término prescriptivo para una acción de mala práctica de la medicina fundada en un procedimiento de esterilización comienza cuando la dama afectada tenga el conocimiento de su embarazo. Aquí sucedió el 21 de febrero de 1991, cuando la demandante Ortega se practicó una prueba *que arrojó un embarazo positivo*. Sostiene que la demanda presentada el 9 de marzo de 1992 está prescrita.

II

El propósito de la prescripción quedó debidamente explicado en *Colón Prieto v. Géigel*, 115 D.P.R. 232, 243 (1984), del modo siguiente:

La institución de la prescripción extintiva aspira a asegurar la estabilidad de la propiedad y la certidumbre de los demás derechos. *Agulló* v. *ASERCO*, 104 D.P.R. 244, 248 (1975). Su innegable necesidad y valor responden a "una presunción legal de abandono, derivada del hecho del transcurso de un tiempo

determinado sin reclamar un derecho". *Eisele* v. *Orcasitas*, 85 D.P.R. 89, 93 (1962). Sin embargo, ninguno de los intereses a los cuales responde es absoluto —de un lado salvaguardar un derecho y del otro, darle carácter definido a la incertidumbre de una posible reclamación— sino que deben ser aquilatados en su justa proyección. Véanse, además: *Alicea v. Córdova*, 117 D.P.R. 676 (1986); *Ortiz v. Municipio de Orocovis*, 113 D.P.R. 484 (1982); *Sánchez v. Cooperativa Azucarera*, 66 D.P.R. 346 (1946); *Cruz v. González*, 66 D.P.R. 212 (1946).

■ Posteriormente, en *Cintrón v. E.L.A.*, 127 D.P.R. 582, 589 (1990), señalamos que "[d]espués de todo, el silencio crea una objetiva y razonable confianza en dicho deudor de que el derecho no será ejercitado. L. Díez-Picazo, *La prescripción en el Código Civil*, Barcelona, Ed. Bosch, 1964, pág. 56; J. Puig Brutau, *Caducidad y Prescripción Extintiva*, Barcelona, Ed. Bosch, 1986, pág. 14". Más adelante expresamos:

El efecto práctico del transcurso del término prescriptivo es claro. Una vez "cumplida la prescripción que quita al derecho del acreedor su fuerza coactiva, por despojarlo de la acción, se ha satisfecho el interés público, y es al particular interesado a quien le corresponde su liberación para satisfacer sus conveniencias individuales". M.J. Argañarás, *La prescripción extintiva*, Buenos Aires, Tipográfica Editora Argentina, 1966, pág. 17. Extinguida la acción destinada a hacer valer el derecho resta tan solo entre las partes una obligación natural o moral irreclamable por la vía judicial. Argañarás, *op. cit.*, pág. 137. *Cintrón v. E.L.A.*, supra, pág. 589.

■ Las acciones por impericia profesional se rigen por el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, independientemente de que un contrato esté involucrado. *Ramos v. Orientalist Rattan Furnt., Inc.*, 130 D.P.R. 712 (1992); *Chévere v. Cátala*, 115 D.P.R. 432, 445 (1984); *Colón Prieto v. Géigel*, supra; *Sáez v. Municipio de Ponce*, 84 D.P.R. 535, 543 (1962); *Rivera v. Dunscombe*, 73 D.P.R. 819, 838 (1952).

■ Por su parte, el Art. 1868 del Código Civil, 31

L.P.R.A. sec. 5298, establece que "[p]rescriben por el transcurso de un (1) año ... las derivadas de la culpa o negligencia". *Cintrón v. E.L.A.*, supra; *Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347 (1988); *Alicea v. Córdova*, supra. Al amparo de su sentido literal y espiritual, hemos decidido que el término prescriptivo para una acción civil de daños por mala práctica de la medicina no comienza a transcurrir hasta que el perjudicado conoce que el daño fue causado probablemente por impericia profesional. *Colón Prieto v. Géigel*, supra; *Riley v. Rodríguez de Pacheco*, 119 D.P.R. 762, 775–776 (1987); H. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. II, Cap. X, págs. 638–640.

■       De igual modo, el Art. 1868 del Código Civil, *supra*, dispone que el término comienza "desde que lo supo el agraviado", aspecto que presupone una determinación del momento exacto en que se conoce o debió conocerse el daño (*punctum temporis*), y que constituye materia de prueba e interpretación. *Rivera Encarnación v. E.L.A.*, 113 D.P.R. 383, 385 (1982).

Al respecto, en *Colón Prieto v. Géigel*, supra, págs. 246–247, dijimos:

> La posición señalada es la más justa y equitativa. Salvaguardamos el derecho de reclamar del perjudicado y no premiamos a aquel que, habiendo causado el daño, se refugió en la confianza e ignorancia de su paciente para beneficiarse y derrotar la acción. "Por lo demás, al perjudicado, para ejercitar la acción, no le basta saber que lo ha sido, sino que precisa conocer quién es el autor del daño, para poder dirigir la demanda contra él, saber a quién debe demandar; por lo cual, a la noticia del daño ha de añadirse la del que lo causó, para que corra la prescripción" (Énfasis nuestro), A. Borrell y Soler, *Derecho Civil Español*, Barcelona, Ed. Bosch, 1955, T. I., Parte General, pág. 500. Véanse: M.J. Argañarás, *La Prescripción Extintiva*, Buenos Aires, Ed. Tea, 1966, pág. 245; L. Enneccerus, *Tratado de Derecho Civil*, Barcelona, Ed. Bosch, 1966, T. II, Vol. 2, 2da parte, pág. 1163.

## III

Apliquemos esta normativa al caso de autos. Según indicado, la demandante Ortega se sometió a un proceso de esterilización en octubre de 1990. Varios meses después, en febrero de 1991, descubrió que estaba embarazada. Lógicamente, en ese momento supo que había sufrido "un daño". Además, el curso biológico y anatómico del embarazo le brindó, por así decirlo, unas manifestaciones exteriores físicas indicativas de esa condición. Aunque en esos momentos no pudiera valorizar toda la magnitud ni extensión del "daño", la conclusión es obvia. Sin embargo, no fue hasta el 9 de marzo de 1992, es decir, trescientos ochenta y dos (382) días luego de saber que estaba embarazada cuando presentó tardíamente la acción.

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Alonso Alonso disintió sin opinión escrita. El Juez Asociado Señor Hernández Denton se inhibió.