RIMCO, INC., demandante y recurrido, *v.* PÉREZ Y CÍA. DE PUERTO RICO, INC., demandada y recurrente.

*Número:* RE-94-344        *Resuelto:* 12 de abril de 1999

*Rafael Mayoral Morales*, del *Bufete Látimer, Biaggi, Rachid, Rodríguez-Suris & Godreau*, abogado del demandante recurrido; *Juan A. López-Conway*, del *Bufete Calvesbert & Brown*, abogado de la demandada recurrente.

El Juez Presidente Señor Andréu García emitió la opinión del Tribunal.

I

La demandante recurrida, Rimco, Inc. presentó esta causa de acción contra la demandada recurrente, Pérez & Cía. de P.R., Inc. (en adelante Pérez & Cía.), para reclamarle el pago adeudado, más intereses, por servicios de reparación, instalación y suministro de piezas de repuesto de un motor Caterpillar en el buque Alraigo, del cual Pérez & Cía. era agente de puerto. Pérez & Cía. negó la existencia de la deuda reclamada y adujo como defensa la prescripción de dicha reclamación.

Atendidas las alegaciones de las partes y la prueba documental y testifical vertida en la vista en su fondo, el antiguo Tribunal Superior, Sala de San Juan, resolvió que Pérez & Cía. contrató con Rimco, Inc. la reparación del buque del cual era agente de puerto y que le es responsable a Rimco, Inc. por los servicios prestados por la suma principal de doce mil trescientos setenta y nueve dólares con cincuenta y siete centavos ($12,379.57) e intereses al 7% anual, más las costas, los gastos y mil ochocientos cincuenta dólares ($1,850) en concepto de honorarios de abogado. En la sentencia nada expresó sobre la defensa de prescripción alegada por la demandada.

Oportunamente, Pérez & Cía. presentó un recurso de revisión ante nos, en el cual señaló que:

Erró el Tribunal Superior al determinar que la acción entablada por la parte demandante no está prescrita.

Erró el Tribunal Superior al determinar que Pérez contrató directamente con RIMCO la reparación del buque "ALRAIGO", y no como agente del armador. Solicitud de revisión, pág. 4.

Habiendo expedido este tribunal el auto de revisión solicitado y estando en condiciones de resolver, procedemos a hacerlo, pero no sin antes exponer los hechos que fueron hallados probados ante el antiguo Tribunal Superior, Sala de San Juan.

## II

Por no haber sido impugnadas, a continuación transcribimos como relación de hechos las determinaciones que dieron base a la sentencia dictada por el tribunal sentenciador.

1. A. Pérez & Cía. de P.R., Inc. (Pérez & Cía.) fungía como "port agent" o agente de puerto del buque "Alraigo". El 31 de marzo de 1987 el armador o dueño del buque remitió dos telex a Pérez & Cía., dirigidos además a la atención del capitán del buque. En uno le indicaba que era preciso la asistencia técnica de la firma Caterpillar a fin de reparar un motor auxiliar del buque, señalaba los problemas que afectan al motor, así como exponía los trabajos a ser realizados. Instaba a agilizar todo lo posible a fin de no demorar la salida del buque y solicitaba se le informara el costo de la reparación, pero subrayaba que no se demorara la misma por el estimado. El segundo telex instaba a preparar la reclamación por la avería del motor para ser sometida a la compañía aseguradora.

2. El mismo 31 de marzo de 1987, el señor Orlandi, Jefe de Operaciones de Pérez & Cía., llamó por teléfono a RIMCO Inc., representantes exclusivos en Puerto Rico de los motores Caterpillar, solicitándole que personal de RIMCO Inc. estuviera presente para cuando el buque "Alraigo" llegase a Puerto Rico se reparase su motor. Luego Orlandi hizo llegar a RIMCO Inc. los telex recibidos del armador. Para RIMCO el más importante fue el telex indicativo de las averías y de las reparaciones a efectuarse y de las piezas a suplirse.

3. RIMCO Inc. realizó las reparaciones al motor del buque "Alraigo", y suministró las piezas de repuesto requeridas, du-

rante los días 2, 3, 4 y 5 de abril de 1987. Entre las cosas que se encontraron estuvo el cilindro número 6 con el pistón roto y las válvulas partidas. Hubo también que reparar el sistema de enfriamiento del motor y suplantarle algunas piezas. Se hicieron numerosos otros trabajos, más o menos los requeridos en el telex. El que le hubiesen adelantado a RIMCO lo que el motor tenía adelantó el proceso. Las hojas de trabajo fueron firmadas y aceptadas por Ricardo Cementía en representación del buque. El buque partió entonces de Puerto Rico.

4. El costo de la reparación efectuada por RIMCO ascendió a $10,576.47 y el costo de las piezas de repuesto suplidas fue de $1,803.10 para un total de $12,279.57.

5. El Sr. Julián A. Ducat, tasador marino (surveyor) de la compañía española aseguradora del buque visitó las oficinas de RIMCO alrededor del 3 de abril para obtener copias de las facturas de reparación del motor. Elló llevó a RIMCO a creer que el pago de la factura sería procesado a través de la aseguradora del buque por lo que, poco más tarde, le requirió el pago a Julián A. Ducat. Este contestó que sólo actuaba de recopilador de información para la aseguradora en España, pero que no había sido él quien había ordenado las reparaciones ni había indicado ser el responsable por el pago. Señaló que el agente del buque "Alraigo" era A. Pérez & Cía.

6. Para junio de 1987 el Gerente de Crédito de RIMCO se comunicó con funcionarios de Pérez & Cía. para reclamarle el pago de la factura. Pérez & Cía. manifestó no tener conocimiento de la factura. RIMCO se la remitió el 30 de junio de 1987. Pérez & Cía. indicó entonces que la factura no era procesable ni pagable porque Pérez & Cía. no había ordenado ni autorizado la reparación.

7. Cuando el buque "Alraigo" fue reparado en abril de 1987, su agente era Pérez & Cía. Cuando RIMCO le remite la factura a Pérez & Cía. el 30 de junio de 1987 ya Pérez & Cía. no era el agente del buque pues desde el 20 de junio de 1987 el nuevo agente era Island Stevedoring Inc. La Sra. Mayra Villalón, Gerente General de Island Stevedoring entonces empezó a ayudar a RIMCO para tratar de obtener el pago de las facturas del armador o dueño del buque (Navieras García Minaur, de España) o de la compañía que lo tenía arrendado (Compañía Marítima de Isla de Pascua, Chile), pero todas las gestiones fueron infructuosas. El buque dejó de venir a Puerto Rico por lo que no se pudo hacer gestión de cobro directamente sobre el buque.

8. RIMCO continuó requiriéndole el pago a Pérez & Cía., haciéndolo el 3 de febrero de 1988 y 8 de septiembre de 1988. Como las facturas no fueron satisfechas, esta demanda se radicó el 25 de marzo de 1991, menos de tres años después de la

última gestión acreditada de cobro·de RIMCO Inc. a Pérez & Cía.

9.  Para el 31 de marzo de 1987 Pérez & Cía. y RIMCO Inc. no habían hecho negocios entre sí y Pérez & Cía no tenía crédito con RIMCO Inc. No obstante, este tipo de solicitud de servicio de emergencia a buques por los agentes, incluyendo nuevos agentes, era práctica frecuente y normal. La práctica y la política es que quien es responsable del pago del servicio es el agente, que lo solicita, el que está en Puerto Rico, y el buque no tiene que ser detenido en Puerto Rico hasta efectuado el pago por el servicio. El buque se puede ir porque el agente en Puerto Rico que solicitó el servicio es responsable frente a quien lo prestó. Una vez se termina el trabajo en el buque, y el trabajo se acepta por el capitán o por su representante, se le autoriza al buque a partir y se le cobra al agente.

Como regla general, además, los suplidores de servicios, lidian y contratan con el agente del buque y rara vez lo hacen directamente con el capitán del buque o con su armero [sic].

10.  Al comunicarse con RIMCO Inc. y al solicitarle los servicios para el buque, el representante de Pérez & Cía. no le hizo resguardo o negativa alguna de su responsabilidad, ni le advirtió ni le dirigió a la contratación directa con el capitán del "Alraigo". Relación del caso, págs. 1–4.

## III

De entrada comenzamos nuestro análisis de la causa de acción de marras, evaluando la defensa de prescripción alegada por la demandada recurrida; pues, como es harto conocido, si la causa de acción está prescrita, procede la desestimación de la demanda. *Acosta Quiñones v. Matos Rodríguez*, 135 D.P.R. 668 (1994); *Ortega et al. v. Pou et al.*, 135 D.P.R. 711 (1994). Al hacer este análisis, obligatoriamente comenzamos evaluando la naturaleza de la causa de acción ejercida y el derecho aplicable a ella.

*Naturaleza de la causa de acción*

En el campo del derecho contractual la determinación de si un contrato cae dentro del ámbito del derecho marítimo dependerá del objeto y la naturaleza del contrato que se esté considerando. Así, cuando el contrato regula

servicios o transacciones relacionados con el comercio marítimo, el contrato es de naturaleza marítima y, en consecuencia, se rige por las normas y los principios aplicables a este campo del Derecho. Ahora bien, ¿cuáles son los servicios o las transacciones relacionadas con el comercio marítimo? En términos sucintos, son aquellos que están relacionados con el uso de una embarcación como tal, con el comercio o la navegación, con la transportación marítima o con empleos marítimos; todo esto independientemente de si el contrato fue preparado para ser ejecutado en tierra o en el mar. 1 *Benedict on Admiralty* Sec. 182, págs. 12-3 a 12-6 (7ma ed. 1996); H.R. Baer, *Admiralty Law of the Supreme Court*, 3ra ed., Virginia, Michie Co., 1979, Sec. 14-1, págs. 464–466; N.J. Healy y D.J. Sharpe, *Cases and Materials on Admiralty*, 2da ed., Minnesota, Ed. West Pub. Co., 1986, págs. 46–55; *León v. Transconex, Inc.*, 119 D.P.R. 102, 105 (1987).

■ Siguiendo los principios esbozados, la jurisprudencia norteamericana y los tratadistas especializados en el campo del derecho marítimo han establecido que un contrato que tiene por objeto la reparación de una embarcación cae dentro del ámbito del derecho marítimo. *Benedict on Admiralty*, supra, Sec. 187, págs. 12–30 a 12–32 (1988); Baer, *op. cit.* Por lo tanto, es inescapable concluir que la causa de acción que consideramos, en la cual se reclama el pago de la reparación del motor auxiliar del buque Alraigo, definitivamente es de naturaleza marítima.[1]

*Derecho aplicable*

■ La naturaleza marítima de la causa de acción ejercitada por Rimco, Inc. necesariamente conlleva la aplicación del derecho marítimo federal, ya sea que se presente la causa de acción ante el foro federal o ante el foro estatal.

---

[1] Véase, también, *North Pac. S.S. Co. v. Hall Bros. Co.*, 249 U.S. 119, 128–129 (1918), citado en *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 613 (1991).

Así lo han resuelto los tribunales federales (²) y así lo reconocimos en *León v. Transconex, Inc.*, supra, págs. 113–114, donde hicimos la expresión siguiente, citando de la obra de Gilmore y Black:(³)

> ... En los casos en que se decide presentar la acción en el foro estatal a base de la cláusula de *saving to suitors*, se entiende que "[t]he same substantive law ought to be applied as would have been applied had the same suit been brought in admiralty. Specifically, the general maritime law where applicable, ought to rule, even though suit is brought in state court".

En conclusión, en toda causa de acción en que se presentan controversias ligadas al derecho marítimo, independientemente del foro que haya sido seleccionado por el reclamante, el derecho aplicable será el derecho marítimo federal. No obstante, esto no significa que el derecho local sea totalmente inaplicable, pues existen casos en los que puede resultar necesario poner en vigor legislación estatal que no sea incompatible con los principios del derecho marítimo federal.

En materia de prescripción de las causas de acción que surgen de contratos de naturaleza marítima, hemos resuelto que los términos recogidos en la legislación local pueden ser aplicados por analogía para determinar cuál es el período dentro del que un reclamante debe instar su causa de acción. A tales efectos, incluimos a continuación las expresiones que hiciéramos hace varios años al determinar el término prescriptivo aplicable a las acciones relativas al cobro de contratos de fletes. En *Mortensen & Lange v. S.J. Mercantile Corp.*, 119 D.P.R. 345, 357–358 (1987), dijimos:

> En lo que respecta a la prescripción, el Derecho Marítimo federal, por ser de creación de los tribunales de almirantazgo,

---

(²) Véanse los casos citados en N.J. Healy y D.J. Sharpe, *Cases and Materials on Admiralty*, 2da ed., Minnesota, Ed. West Pub. Co., 1986, págs. 72–99.

(³) G. Gilmore y C. Black, *The Law of Admiralty*, 2da ed., Nueva York, Ed. Fundation Press, 1974, págs. 50–51.

no tienen estatutos de prescripción para las diversas causas de acción que surjan del mismo, excepto cuando la acción se funda en alguna ley especial. Los tribunales aplican en estos casos la doctrina en equidad de *laches*. [Citas omitidas.] La aplicación de esta doctrina depende de un cuidadoso análisis de la totalidad de los hechos en cada caso. [Cita omitida.] El promovente de la acción tiene que demostrar que su tardanza no fue irrazonable, y que no causó perjuicio debido al tiempo transcurrido. [Cita omitida.] Para guiar su sana discreción al determinar la razonabilidad del tiempo transcurrido, los tribunales suelen tomar como fundamento el término de prescripción análogo de la legislación local. [Citas omitidas.] Sin embargo, el estatuto análogo estatal no obliga al tribunal; ese término es sólo un elemento a considerar, entre otros, al determinar si la tardanza constituyó *laches* o no. [Citas omitidas.]

Lo anterior, sin embargo, no es de aplicación en todo caso. Cuando una ley reglamenta una causa de acción y especifica su término prescriptivo, el mismo gobierna dicha reclamación. En el caso de Puerto Rico, la Asamblea Legislativa tiene facultad para legislar en materias marítimas.

■ A tenor con el texto transcrito, resolvimos en aquella ocasión que la parte reclamante tenía que ejercer su causa de acción dentro del término de seis (6) meses establecido por el Art. 947 del Código de Comercio, 10 L.P.R.A. sec. 1909, para las acciones que surgen al amparo de un contrato de flete. Del mismo modo, en la oportunidad que ahora se nos presenta establecemos que las acciones derivadas de un contrato de reparación de un buque deben ser presentadas dentro del término de prescripción que fije nuestro ordenamiento para estas causas de acción, para así evitar que se determine que hubo una dilación irrazonable.

■ Pero, ¿cuál es este término? Hoy, siguiendo la norma trazada en *Pescadería Rosas, Inc. v. Lozada*, 116 D.P.R. 474 (1985), resolvemos que es el término fijado por el Art. 948 del Código de Comercio, 10 L.P.R.A. sec. 1910, pues estamos ante una reclamación que surge al amparo de la reparación de una embarcación destinada a la navegación *comercial*. Como dijimos en esa ocasión:

... El artículo [948 del Código de Comercio] no es aplicable a la reparación de toda clase de embarcaciones. El examen de la definición del término "buque" ilustra esta aseveración. Si bien existe controversia sobre el particular, el término abarca a todo género de embarcaciones destinadas a la navegación *comercial*. [Citas omitidas.]

... [D]ebe en consecuencia demostrarse que se trata de un acto mercantil, esto es, que la nave posee la condición jurídica de "buque" por destinarse a la navegación comercial. (Énfasis suplido.) *Pescadería Rosas, Inc. v. Lozada*, supra, págs. 480–481.

## IV

Habiendo ya establecido el derecho aplicable al caso de autos, procedamos a su solución.

El Art. 948 del Código de Comercio, *supra,* dispone en su primer inciso:

Prescribirán al año:

(1) Las acciones nacidas de servicios, obras, provisiones y suministros de efectos o dinero, para construir, reparar, pertrechar o avituallar los buques o mantener la tripulación, a contar desde la entrega de los efectos y dinero o de los plazos estipulados para su pago, y desde la prestación de los servicios o trabajos, si éstos no estuviesen contratados por tiempo o viaje determinados. Si lo estuviesen, el tiempo de la prescripción comenzará a contarse desde el término del viaje o del contrato que les fuere referente; y si hubiera interrupción en éstos, desde la cesión definitiva del servicio.

De una lectura simple de este artículo se desprende que la causa de acción instada por Rimco, Inc. está sujeta al período prescriptivo de un (1) año que el mismo establece y prescrita por no haber sido ejercida en tiempo. Recordemos que, como ya adelantamos, estamos ante una reclamación que surge por la reparación y el suministro de piezas a una embarcación dedicada al comercio marítimo; dichas labores se efectuaron los días 2, 3, 4 y 5 de abril de 1987, y no fue hasta el 25 de marzo de 1991 que se presentó la demanda para reclamar su pago. También recor-

demos que aun si las gestiones de cobro que hizo Rimco, Inc. hubieran interrumpido el transcurso del término prescriptivo, *asunto que no estamos resolviendo*, la última gestión de cobro registrada fue el 8 de septiembre de 1988, casi tres (3) años antes de la fecha en que finalmente se presentó la demanda. Por lo tanto, nos vemos en la obligación de ordenar la desestimación de la demanda presentada por Rimco, Inc. contra Pérez & Cía., sin la necesidad de entrar a discutir el otro señalamiento de error hecho por la recurrente.

## V

Por las razones antes expuestas, *se dictará sentencia revocatoria de aquella dictada por el antiguo Tribunal Superior, Sala de San Juan, y se ordenará la desestimación de la demanda.*

El Juez Asociado Señor Hernández Denton no intervino. El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita.