ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ÁLVARO E. ÁLVAREZ CASILLAS; ÁLVARO J. ÁLVAREZ CARPIO; HILDA A. ÁLVAREZ RODRÍGUEZ; HITLER G. ÁLVAREZ JIMÉNEZ; VIRGINIA M. ÁLVAREZ JIMÉNEZ; ARMENIA G. ÁLVAREZ JIMÉNEZ; ÁLVARO E. ÁLVAREZ JIMÉNEZ<br><br>Apelantes<br><br>v.<br><br>CENTRO MÉDICO DEL TURABO, INC. T/C/C HIMA SAN PABLO DE CAGUAS; DR. ORLANDO PADILLA DE JESÚS; su esposa FULANA DE TAL y la Sociedad Legal de Gananciales compuesta entre ambos; DR. PEDRO R. BADILLO ABASOLO, su esposa ZUTANA DE TAL y la Sociedad Legal de Gananciales compuesta entre ambos; COMPAÑÍAS ASEGURADORAS A, B y C; MENGANO DE TAL<br><br>Apelados | KLAN202300542 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br><br>Caso Núm.: CG2021CV01559<br><br><br>Sobre: Daños y Perjuicios, Impericia Médica |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero.

*Martínez Cordero, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de septiembre de 2023.

Comparece Álvaro E. Álvarez Casillas, Álvaro J. Álvarez Carpio, Hilda A. Álvarez Rodríguez, Hitler G. Álvarez Jiménez, Virginia M. Álvarez Jiménez, Armenia G. Álvarez Jiménez y Álvaro E. Álvarez Jiménez (en conjunto, parte apelante) mediante recurso de *Apelación* para solicitarnos que revisemos y revoquemos la *Sentencia Parcial* emitida el 23 de mayo de 2023, y notificada el 25

Número Identificador

SEN2023_____

de mayo de 2023, por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, TPI).[1] Mediante el dictamen apelado, el foro primario desestimó con perjuicio las reclamaciones por daños morales propios instadas por varios de los codemandantes del título[2], por estar prescritas.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia Parcial* dictada por el TPI.

**I**

El 25 de junio de 2021, la parte apelante presentó una *Demanda* de daños y perjuicios por impericia médica al amparo del Artículo 41.090 de la Ley Núm. 77 de junio de 1957[3], contra el Centro Médico del Turabo, Inc. t/c/c HIMA San Pablo de Caguas; Dr. Orlando Padilla De Jesús; su esposa Fulana de Tal y la Sociedad Legal de Gananciales (en adelante SLG) compuesta entre ambos; Dr. Pedro R. Badillo Abasolo; su esposa Zutana de Tal y la SLG compuesta por ambos; Compañías Aseguradoras A, B y C; y, Mengano de Tal.[4] Los hechos sobre los que versa la *Demanda* ocurrieron el 13 y 14 de julio de 2019. En la *Demanda,* la parte apelante reclamó contra los demandados del título, por los daños, sufrimientos, angustias mentales y daños morales asociados al fallecimiento de su padre, el señor Álvaro Álvarez Robles. Además, reclamaron la causa heredada por el sufrimiento y angustias mentales del señor Álvaro Álvarez Robles. Los daños reclamados se calcularon en una suma no menor de $5,000.000.00 dólares.

El 20 de septiembre de 2021, el doctor Pedro R. Badillo Abasolo (en adelante, doctor Badillo) presentó *Contestación a*

---

[1] Apéndice 1 de la parte apelante, a las págs. 1-7. Apéndice 4 del *Alegato en Oposición,* a las págs. 41-48. Apéndice de *Oposición: Apelación Civil,* a las págs. 29-35.

[2] Específicamente, se desestimó en cuanto a: (i) Álvaro J. Álvarez Carpio, (ii) Hilda A. Álvarez Rodríguez, (iii) Hitler G. Álvarez Jiménez, (iv) Virginia Álvarez Jiménez, (v) Armenia Álvarez Jiménez y (vi) Álvaro E. Álvarez Jiménez. Sobreviviendo la acción solo en torno a Álvaro Álvarez Casillas.

[3] Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957, según enmendada, Art. 41.090, 26 LPRA § 4109.

[4] Apéndice 1 de la parte apelante, a las págs. 17-27.

*Demanda.*[5] Por su parte, el 6 de octubre de 2021, el doctor Orlando Padilla De Jesús (en adelante, doctor Padilla) presentó su *Contestación a Demanda.*[6] En lo pertinente, ambos codemandados opusieron la prescripción como defensa afirmativa en sus respectivas alegaciones responsivas, alegando que, por lo tanto, procedía la desestimación de la *Demanda.*

Dos años más tarde, el 13 de enero de 2023, el doctor Badillo presentó escrito intitulado *Moción Sentencia Sumaria por Prescripción.*[7] En ella, solicitó al foro primario la desestimación con perjuicio de la causa de acción directa de los codemandantes del título, a excepción de la presentada por el señor Álvaro Álvarez Casillas. Explicó que, el señor Álvaro Álvarez Casillas le envió una carta extrajudicial el 10 de julio de 2020, con el propósito de interrumpir el término prescriptivo por sí y por la sucesión de Álvaro Álvarez Robles. En dicha carta solicitó indemnización por los hechos relatados en la *Demanda.*

Luego, el 17 de febrero de 2023, el doctor Padilla presentó *Moción Uniéndonos a Moción de Sentencia Sumaria por Prescripción Radicada por el Doctor Pedro Badillo Abasolo.*[8] Allí, en síntesis, el doctor Padilla se unió al reclamo del doctor Badillo. De igual forma, la carta extrajudicial que se le envió solo estaba suscrita por el señor Álvaro Álvarez Casillas por sí y por la sucesión de Álvaro Álvarez Robles. Aun cuando no surge del recurso ante nuestra consideración, se desprende de los autos, que dichas mociones fueron oportunamente opuestas por la parte apelante el 16 de febrero[9] y el 27 de marzo de 2023[10].[11] El 11 de abril de 2023, el

---

[5] Apéndice 1 de la *Oposición: Apelación Civil,* a las págs. 1-9.
[6] Apéndice 1 del *Alegato en Oposición,* a las págs. 1-7.
[7] Apéndice 2 de la *Oposición: Apelación Civil,* a las págs. 10-21. Apéndice 2 del *Alegato en Oposición,* a las páginas 8-34.
[8] Apéndice del *Alegato en Oposición,* a las págs. 35-40.
[9] Entrada 64 al expediente judicial en el Sistema Unificado de Manejo y Administración de Casos (por sus siglas, SUMAC).
[10] Entrada 70 al expediente judicial en el SUMAC.
[11] Apéndice de la parte apelante, a la pág. 1.

doctor Badillo presentó escrito intitulado *Réplica a Oposición a Moción de Sentencia Sumaria por Prescripción.*[12]

De ahí, el 23 de mayo de 2023, notificada el 25 de mayo de 2023, el TPI emitió la *Sentencia Parcial* apelada.[13] En ella, desestimó con perjuicio las reclamaciones por daños morales propios instadas por los codemandantes del título, a excepción de la presentada por el señor Álvaro Álvarez Casillas, concluyendo que estaban prescritas. Allí, el foro primario concluyó que:

> Entre las partes no existe controversia que es de un año el término prescriptivo para instar una causa de acción reclamando el resarcimiento de daños morales propios. Tampoco existe controversia que dicho término comenzó a decursar no más tarde del 14 de julio de 2019, fecha del fallecimiento del Álvaro Álvarez Robles. *Ergo*, los demandantes tenían hasta el 14 de julio de 2020 para interrumpir sus respectivas causas de acción y/o instar la correspondiente acción judicial. Tampoco existe controversia que el 10 de julio de 2020, Álvarez Casillas curs[ó] comunicación extrajudicial por separado a los médicos co-demandados antes identificados. Dichas comunicaciones no fueron suscritas por los co-demandantes Álvaro J. Álvarez Carpio, Hilda A. Álvarez Rodríguez, Hitler G. Álvarez Jiménez, Virginia Álvarez Jiménez, Armenia Álvarez Jiménez y Álvaro E. Álvarez Jiménez.

Conforme se desprende de la *Sentencia Parcial* apelada, los doctores Badillo y Padilla aceptaron que: (i) las cartas enviadas por el señor Álvaro Álvarez Casillas tuvieron el efecto de interrumpir la causa de acción directa de dicho reclamante, entiéndase, la causa de acción por los daños morales personales sufridos por este; y, que (ii) las comunicaciones tuvieron el efecto de interrumpir, a nombre de la parte apelante, el término prescriptivo de la causa de acción heredada del causante Álvaro Álvarez Robles. Tomando esto en consideración, el tribunal *a quo* razonó que, lo que quedó pendiente era determinar si las cartas cursadas a los doctores Badillo y Padilla, constituyeron una reclamación extrajudicial que interrumpió el término prescriptivo que tenía el resto de la parte apelante del título

---

[12] Apéndice de la *Oposición: Apelación Civil,* a las págs. 22-28.
[13] Apéndice de la parte apelante, a las págs. 1-7.

que no suscribieron las mismas para instar la causa de acción, reclamando el resarcimiento de sus daños propios. Sobre el particular, el foro primario concluyó en la negativa, por tanto, determinó que estas causas de acción estaban prescritas.

Inconforme, el 22 de junio de 2023, la parte apelante presentó un recurso de *Apelación*, mediante el cual esgrimió la comisión de un error por el foro primario, a saber:

> Erró el Honorable Tribunal de Primera Instancia al desestimar con perjuicio las causas de acciones de varios demandantes por alegada prescripción.

El 24 de julio de 2023, compareció el doctor Badillo, mediante escrito intitulado *Oposición: Apelación Civil* y el doctor Padilla, mediante escrito intitulado *Alegato en Oposición*. Luego de haber expuesto la relación de hechos presentada, y contando con la comparecencia de todas las partes, procederemos a exponer el derecho aplicable.

**II**

**A. Recurso de Apelación**

La Regla 52.2(a) de las Reglas de Procedimiento Civil[14], dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable[15]. La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[16] Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta

---

[14] 32 LPRA Ap. V, R. 52.2(a).
[15] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000). *Arriaga v. FSE*, 145 DPR 122, 131 (1998). *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).
[16] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).

días contados desde el archivo en autos de una copia de la notificación de la sentencia.

En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios y funcionarias, o una de sus instrumentalidades que no fuere una corporación pública, o en que los Municipios de Puerto Rico o sus funcionarios y funcionarias sean parte en un pleito, el recurso de apelación se formalizará, por cualquier parte en el pleito que haya sido perjudicada por la sentencia, presentando un escrito de apelación dentro del término jurisdiccional de sesenta días, contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado. [17]

### B. La Sentencia Sumaria

Como es sabido, en nuestro ordenamiento, el mecanismo de la sentencia sumaria está regido por la Regla 36 de las Reglas Procedimiento Civil[18], la cual desglosa los requisitos específicos con los que debe cumplir esta figura procesal.[19] El mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que únicamente se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho.[20] Solamente debe ser dictada una sentencia sumaria "en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes".[21]

El propósito de la sentencia sumaria es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo.[22] En otras palabras, el tribunal procederá a dictar sentencia sumaria solo cuando esté claramente convencido que la vista evidenciaria es innecesaria.[23] Al no haber controversia sustancial y real sobre

---

[17] 4 LPRA Ap. XXII-B, R. 13 (A).
[18] 32 LPRA Ap. V, R. 36.
[19] *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209, 224 (2015).
[20] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911 (1994).
[21] *Id. Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 720-721 (1986). *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 726 (1994). *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 279 (1990).
[22] *García Rivera et al. v. Enríquez,* 153 DPR 323, 337 (2001). *Pilot Life Ins. Co. v. Crespo Martínez,* 136 DPR 624, 632 (1994).
[23] *Nissen Holland v. Genthaller,* 172 DPR 503, 511 (2007).

hechos materiales, sólo falta aplicar el derecho pertinente a la controversia.[24] Por lo tanto, una controversia en torno a hecho no materiales, de existir, no impide que el tribunal dicte una sentencia por la vía sumaria.[25]

En consonancia con lo anterior, el mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios judiciales y evitar el derroche de dinero y tiempo que implica la celebración de un juicio en su fondo.[26] La Regla 36.3 de las Reglas de Procedimiento Civil[27], detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (i) una exposición breve de las alegaciones de las partes; (ii) los asuntos litigiosos o en controversia; (iii) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (iv) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (v) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (vi) el remedio que debe ser concedido.[28]

Por su parte, la Reglas 36.3 inciso (a)(4) de las Reglas de Procedimiento Civil dispone:

> (a) La moción de sentencia sumaria se notificará a la parte contraria y contendrá lo siguiente: …

---

[24] *García Rivera et al. v. Enríquez, supra.*
[25] *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 DPR 945 (1993).
[26] *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615, 630 (2009). *Padín v. Rossi*, 100 DPR 259, 263 (1971). *William Pérez Vargas v. Office Depot / Office Max, Inc.*, 203 DPR 687, 699 (2019).
[27] 32 LPRA Ap. V, R. 36.3.
[28] *Id. Rodríguez García v. UCA*, 200 DPR 929, 940 (2018). *William Pérez Vargas v. Office Depot / Office Max, Inc., supra*, 698.

(4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal...[29]

Por otro lado, la Regla 36.3 inciso (c) de las Reglas de Procedimiento Civil lee como sigue:

(b) Cuando se presente una moción de sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede. [30]

Cumplidos estos requisitos, el inciso (e) de la Regla 36.3 de las Reglas de Procedimiento Civil establece que:

La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.[31]

Sin embargo, el solo hecho de no presentar evidencia que controvierta la presentada por la parte promovente no implica que necesariamente proceda la sentencia sumaria.[32]

Conforme ha resuelto el Tribunal Supremo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5 de las Reglas de Procedimiento Civil[33], estará obligada a demostrar que [tiene] prueba para

---

[29] 32 LPRA Ap. V, R. 36.3(a)(4).
[30] 32 LPRA Ap. V, R. 36.3(c).
[31] *García Rivera et al. v. Enríquez*, 153 DPR 323 (2001). *Roldán Flores v. M. Cuebas*, 199 DPR 664, 676 (2018). *Lugo Montalvo v. Sol Meliá Vacation*, supra, 225. *SLG Zapata-Rivera v. J. F. Montalvo*, supra, 430.
[32] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, 913. *García Rivera et al. v. Enríquez*, 153 DPR 323, 338 (2001). *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 DPR 538, 549 (1991). *Cuadrado Lugo v. Santiago Rodríguez*, supra, 281. *Corp. Presiding Bishop CJS of LDS v. Purcell*, supra, 721.
[33] 32 LPRA Ap. V, R. 36.5.

sustanciar sus alegaciones".[34] Las meras afirmaciones no bastan.[35]

"Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente".[36]

El Tribunal Supremo se expresó en cuanto al proceso de revisión de las sentencias sumarias y estableció que en dicho proceso el Tribunal de Apelaciones debe: (i) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de las Reglas de Procedimiento Civil[37], y la jurisprudencia le exigen al foro primario; (ii) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36[38]; (iii) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de las Reglas de Procedimiento Civil[39], de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; (iv) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[40]

En cuanto a la identificación de las controversias de hecho y de derecho, el Tribunal Supremo ha llamado la atención a lo siguiente:

> Aunque a veces no es fácil atisbar la diferencia, es vital que los tribunales distingan puntualmente entre lo que es un hecho y una conclusión de derecho. Un "hecho" en el campo jurídico es un acontecimiento o un comportamiento determinado y pertinente para la norma legal que se pretende aplicar. La norma jurídica

---

[34] *Flores v. Municipio de Caguas*, 114 DPR 521, 525 (1983). *Ramos Pérez v. Univisión*, 178 DPR 200, 215-216 (2010).
[35] *Id.*
[36] *Ramos Pérez v. Univisión, supra,* 215. *Roldán Flores v. M. Cuebas, Inc.*, supra, 677.
[37] 32 LPRA Ap. V, R. 36.
[38] *Id.*
[39] 32 LPRA Ap. V, R. 36.4.
[40] *Roldán Flores v. M. Cuebas, Inc., supra,* 679. *Meléndez González v. M. Cuebas,* 193 DPR 100, 118-119 (2015).

se aplica al supuesto que constituye el "hecho" para arribar a determinada conclusión de derecho.

*[. . .]*

En todo caso debidamente instado ante un foro judicial habrá siempre una controversia de derecho presente y es precisamente esa controversia la que vienen los tribunales llamados a resolver. Si se comete el error de catalogar las controversias de derecho como controversias de hecho se eliminaría virtualmente el mecanismo de sentencia sumaria de nuestro ordenamiento procesal, pues este requiere expresamente la inexistencia de una controversia de hechos materiales para que un tribunal pueda dictar sentencia de esa forma.[41]

La sentencia sumaria no procederá en las instancias que: (i) existan hechos materiales y esenciales controvertidos; (ii) haya alegaciones afirmativas en la demanda que no han sido refutadas; (iii) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (iv) como cuestión de derecho, no proceda.[42] Además, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos maneras: (i) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia; (ii) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta.[43] Las partes no pueden añadir en apelación exhibit[s], deposiciones o affidávit[s] que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo.[44] Mientras que el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlos.[45] También, se ha aclarado que al foro apelativo

---

[41] *Lugo Montalvo v. Sol Meliá Vacation, supra,* 226-227.
[42] *SLG Fernández-Bernal v. RAD-MAN,* 208 DPR 310, 335 (2021).
[43] *Meléndez González v. M. Cuebas, supra,* 114.
[44] *Id.*
[45] *Id.,* a la pág. 115.

le es vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia.[46]

## C. Prescripción

La prescripción es una materia sustantiva que se rige por las disposiciones del Código Civil de Puerto Rico (en adelante, Código Civil). Por la prescripción se extinguen del propio modo los derechos y las acciones, de cualquier clase que sean.[47] En el ordenamiento jurídico vigente durante los hechos del caso, las acciones prescriben por el mero lapso del tiempo fijado por la ley.[48] Así, las cosas, el tiempo para la prescripción de toda clase de acciones, cuando no haya disposición especial que otra cosa determine, se contará desde el día en que pudieron ejercitarse.[49]

"La prescripción extintiva es una institución de derecho sustantivo que extingue el derecho a ejercer determinada causa de acción".[50] Esta tiene efecto de extinguir los derechos cuando no concurra un acto interruptor dentro del plazo.[51] La prescripción extintiva "tiene como propósito castigar la inercia y estimular el ejercicio rápido de las acciones, puesto que no se debe exponer a las personas toda la vida, o por un largo tiempo, a ser demandadas".[52]

El término prescriptivo respecto a las reclamaciones para exigir responsabilidad extracontractual, por las obligaciones derivadas de la culpa o negligencia, es de un (1) año, contado desde que la persona agraviada conoce la existencia del daño y quien lo causó.[53] Dicha responsabilidad emana del Artículo 1802 del Código

---

[46] *Vera v. Bravo*, 161 DPR 308, 335 (2004).

[47] 31 LPRA § 5241, Art. 1830. El Código Civil de Puerto Rico de 1930 fue derogado por el Código Civil de Puerto Rico de 2020 aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia que nos ocupa.

[48] 31 LPRA § 5291, Art. 1861.

[49] 31 LPRA § 5299, Art. 1869.

[50] *Maldonado Rivera v. Suarez y otros*, 195 DPR 182, 192 (2016).

[51] *Id.*

[52] *Haedo Castro v. Roldán Morales*, 203 DPR 324, 336-337 (2019). *COSSEC et al. v. González López et al.*, 179 DPR 793, 806 (2010).

[53] 31 LPRA § 5298, Art. 1868.

Civil, el mismo lee como sigue: "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado...".[54] Este término prescriptivo de un (1) año comienza a transcurrir cuando el reclamante conoció o debió conocer que sufrió un daño, quién se lo causó y los elementos necesarios que permiten ejercer de manera efectiva su causa de acción.[55] Como es sabido, si la causa de acción está prescrita, procede la desestimación de la demanda.[56]

### D. Reclamación Extrajudicial

Bajo el crisol doctrinario existen tres (3) formas de interrumpir la prescripción de las acciones: (i) por su ejercicio ante los tribunales; (ii) por reclamación extrajudicial del acreedor; y, (iii) por cualquier acto de reconocimiento de la deuda por el deudor.[57] El acto interruptor que se lleve a cabo representa la manifestación inequívoca de una voluntad contraria al mantenimiento de la situación inerte manifestada con anterioridad a que el plazo de deliberación se agote.[58] A raíz de ello, la presunción en virtud de la cual se da la prescripción se desvanece, por lo que resulta lógico que se deje sin efecto el plazo de tiempo transcurrido, el cual debe comenzar de nuevo.[59] El fundamento reconocido detrás de la interrupción es la manifestación inequívoca de quien, amenazado con la pérdida de su derecho, expresa a la otra parte su voluntad de no perderlo.[60]

Consecuentemente, la reclamación extrajudicial sirve varios propósitos fundamentales: (i) interrumpir el transcurso del término prescriptivo de las acciones; (ii) fomentar las transacciones extrajudiciales; y, (iii) notificar, a grandes rasgos, la naturaleza de la

---

[54] 31 LPRA § 5141, Art. 1802.
[55] *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 374 (2012).
[56] *Rimco, Inc. v. Perez y Cia. de P.R., Inc.*, 148 DPR 60, 65 (1999).
[57] 31 LPRA § 5303, Art. 1873.
[58] *García Aponte et al. v. ELA et al.*, 135 DPR 137, 143 (1994).
[59] *Id.*
[60] *Cintrón v. ELA*, 127 DPR 582, 590 (1990).

reclamación.[61] Destacamos que, en nuestro ordenamiento jurídico no exige forma específica para interrumpir la prescripción.[62] De esa forma, la carta es uno de los medios tradicionalmente reconocidos para efectuar una reclamación extrajudicial.[63] Por consiguiente, la carta en cuestión debe contener los elementos intrínsecos de toda reclamación extrajudicial: (i) identifica claramente tanto al acreedor como al deudor del derecho, la carta deberá ir dirigida a este último; (ii) en términos generales, los elementos necesarios en derecho para entablar una reclamación, ejemplo en una reclamación por daños y perjuicios se describe el daño, el acto culposo o negligente y se establece la relación causal entre el daño y el acto culposo o negligente; y, (iii) se requiere del deudor que adopte el comportamiento debido.[64]

## III

El caso ante nuestra consideración tuvo su génesis tras presentarse una *Demanda* de daños y perjuicios por impericia médica. La *Demanda* fue presentada por los siete (7) miembros de la sucesión del señor Álvaro Álvarez Robles, es decir, sus hijos: (i) Álvaro E. Álvarez Casillas, (ii) Álvaro J. Álvarez Carpio, (iii) Hilda A. Álvarez Rodríguez, (iv) Hitler G. Álvarez Jiménez, (v) Virginia M. Álvarez Jiménez, (vi) Armenia G. Álvarez Jiménez y (vii) Álvaro E. Álvarez Jiménez. En dicha *Demanda*, la parte apelante reclamó por los daños, sufrimientos, angustias mentales y daños morales asociados al fallecimiento de su padre, el señor Álvaro Álvarez Robles; y, por la causa heredada por el sufrimiento y angustias mentales del señor Álvaro Álvarez Robles. Hacemos mención de que, la obligación de reparar el daño nacido del Artículo 1802[65], crea en la parte perjudicada un correlativo derecho a recibir indemnización,

---

[61] *De León v. Caparra Center*, 147 DPR 797, 803 (1999).
[62] *Id.*, 804.
[63] *Id.*, 799.
[64] *Id.*, 806.
[65] 31 LPRA § 5141, Art. 1802.

en sí, un bien valorable y transmisible a sus herederos por mandato del Artículo 1065[66], al efecto de que todos los derechos adquiridos en virtud de una obligación son transmisibles con sujeción a las leyes, si no se hubiese pactado lo contrario; y, bajo las reglas de sucesión universal encarnadas en los Artículos 608 y 610.[67] Cuando ambas causas de acción se ejercitan por la sucesión de la persona a la cual se le ocasionó el daño, las diferenciamos llamando a la primera acción directa o personal y a la segunda la acción heredada o patrimonial.[68]

Según hemos expuesto, el mecanismo de la sentencia sumaria se encuentra regulado en la Regla 36 de las Reglas de Procedimiento Civil de 2009.[69] Sabido es que la revisión por este tribunal intermedio, de la determinación de un foro primario en cuanto a una moción de sentencia sumaria y su correspondiente oposición acontece *de novo.* Siendo así, como cuestión de umbral, debemos revisar si la moción de sentencia sumaria, así como el escrito en oposición cumplen con los requisitos de forma que dispone la Regla 36.3 (a) y (b) de las Reglas de Procedimiento Civil.[70]

En el presente caso, juzgamos que los proponentes de la solicitud de sentencia sumaria, entiéndase, los doctores Padilla y Badillo, cumplieron con los requisitos dimanantes de la antes citada regla. Empero, destacamos que la parte apelante no incluyó en su apéndice, ni la solicitud de sentencia sumaria, ni el escrito mediante el cual el doctor Padilla se unió a la referida solicitud. De igual forma, tampoco incluyó la oposición a sentencia sumaria. Revisado el expediente ante nos, pudimos constatar que fueron los doctores Badillo y Padilla, mediante sus correspondientes alegatos en oposición, quienes incluyeron los documentos en el apéndice.

---

[66] 31 LPRA § 3029, Art. 1065.
[67] 31 LPRA § 2090 & 2092, Art. 608 y 610.
[68] *Viuda de Delgado v. Boston Ins. Co.*, 101 DPR 598, 600 (1973).
[69] 32 LPRA Ap. V, R. 36.
[70] 32 LPRA Ap. V, R. 36.3 (a) y (b).

Destacamos que ambos escritos cumplen con los requisitos dimanantes de la Regla 36 de las Reglas de Procedimiento Civil.[71]

Al no contar esta Curia con el escrito en oposición a la solicitud de sentencia sumaria, nos dimos a la tarea de corroborar el expediente del TPI en el Sistema Unificado de Manejo y Administración de Casos (por sus siglas, SUMAC). Allí, pudimos constatar que la oposición fue presentada en la Entrada 75 al expediente judicial y que la misma no cumple con los requisitos procesales de la antes citada regla. No obstante, lo anterior, el foro primario adjudicó la misma y esta Curia se encuentra en igual circunstancia.

Ahora bien, regresando al asunto ante nuestra consideración, en cuanto a los sucesos previos a la presentación de la *Demanda*, no existe controversia de que, el 10 de julio de 2020, cerca de cumplirse un (1) año de la muerte del señor Álvaro Álvarez Robles, su hijo el señor Álvaro Álvarez Casillas envió cartas extrajudiciales a los doctores Badillo y Padilla. Enfatizamos que, con estas cartas el señor Álvaro Álvarez Casillas tenía la intención de interrumpir la prescripción de la acción a través de uno de los medios disponibles, la reclamación extrajudicial del acreedor.[72] Los sucesos que alegadamente llevaron al fallecimiento del señor Álvaro Álvarez Robles, habían ocurrido el 13 y 14 de julio de 2019. A tales efectos, el término para presentar una causa de acción judicial comenzó a decursar no más tarde del 14 de julio de 2019, fecha del fallecimiento del señor Álvaro Álvarez Robles. Acentuamos que, en el caso de las acciones para exigir responsabilidad civil por las obligaciones derivadas de la culpa o negligencia, el Código Civil establece que prescriben por el transcurso del año, desde que los

---

[71] 32 LPRA Ap. V, R. 36.
[72] 31 LPRA § 5303, Art. 1873.

agraviados conocieron el daño.[73] Las cartas tuvieron el efecto de interrumpir extrajudicialmente el término para presentar una reclamación por la vía judicial por la causa de acción personal del señor Álvaro Álvarez Casillas y la causa de acción heredada de la sucesión del señor Álvaro Álvarez Robles.

Es de ver, que el doctor Badillo presentó una moción de sentencia sumaria solicitando la desestimación por razón de prescripción de las causas de acción instadas por seis (6) de los siete (7) miembros de la parte apelante, entiéndase: (i) Álvaro J. Álvarez Carpio, (ii) Hilda A. Álvarez Rodríguez, (iii) Hitler G. Álvarez Jiménez, (iv) Virginia Álvarez Jiménez, (v) Armenia Álvarez Jiménez y (vi) Álvaro E. Álvarez Jiménez. Por su parte, el doctor Padilla se unió a lo expuesto y solicitado en dicha moción. No obstante, no solicitaron la desestimación en cuanto a la causa de acción personal del señor Álvaro Álvarez Casillas, debido a que este había cursado a ambos doctores, Badillo y Padilla, cartas extrajudiciales, por sí y por la sucesión del señor Álvaro Álvarez Robles. Quiérase decir, que las cartas no fueron suscritas por ninguno de los otros seis (6) miembros de la parte apelante. Las cartas en cuestión solo estaban firmadas por el señor Álvaro Álvarez Casillas. Es menester recordar, además, que, conforme dispone nuestro ordenamiento jurídico, una sucesión no tiene personalidad jurídica.[74] Por tanto, no existiendo una carta extrajudicial presentada por cada uno de los miembros de la sucesión, juzgamos que la carta suscrita exclusivamente por Álvaro Álvarez Casillas solo tuvo el efecto de interrumpir el término de su acción personal estrictamente en cuanto a su persona.

Además, en ambas cartas el señor Álvaro Álvarez Casillas indicó que, en expresión singular: "[...] **estoy** reclamando UN

---

[73] 31 LPRA § 5298, Art. 1868.
[74] *Vilanova v. Vilanova,* 184 DPR 824, 839 (2012). *Kogan v. Registrador,* 125 DPR 636, 656 (1990).

MILL[Ó]N DE D[Ó]LARES ($1,000,000) como compensación [...]" y "[...] En la eventualidad de que usted no pague la cantidad antes mencionada, **estaré** presentando una acción judicial correspondiente para resarcir, sin limitarse a éstos, por los daños antes mencionados.". (Énfasis suplido). Cónsono con lo antes expuesto, el TPI razonó que, dichas cartas extrajudiciales no interrumpieron el término de la causa de acción personal de los seis (6) miembros de la parte apelante antes mencionados. A esos efectos, el TPI concedió la solicitud de desestimación respecto a seis (6) de los siete (7) miembros que conforman la parte apelante. Es decir, sobreviviendo la acción solo en torno al señor Álvaro Álvarez Casillas.

A la luz de lo anterior, la parte apelante acudió ante esta Curia mediante un recurso de *Apelación* en el cual alegó que erró el TPI al desestimar con perjuicio las causas de acciones de seis (6) de los miembros de la parte apelante por alegada prescripción. Coincidimos con la apreciación de la primera instancia judicial. Es nuestro criterio que el error alegado no fue cometido por el foro primario. Puntualizamos que, la primera vez que los seis (6) miembros de la parte apelante ejercieron sus respectivas causas de acción personal por sus propios sufrimientos y angustias mentales, fue a través de la *Demanda* radicada el 25 de junio de 2021, luego de un término de casi dos (2) años de haber sufrido el daño. Debido a ello, cualquier causa de acción personal de los seis (6) miembros de la parte apelante quedó prescrita a tenor con los hechos y el marco jurídico antes esbozado.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia Parcial* dictada por el TPI.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones